**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| REDSTONE LOGICS LLC,<br><br>               Plaintiff,<br>v.<br><br>NVIDIA CORPORATION<br><br>               Defendant. | Case No.  7:25-cv-000184-ADA |

**PLAINTIFF'S RESPONSIVE CLAIM CONSTRUCTION BRIEF**

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II. DISPUTED TERMS REQUIRING CONSTRUCTION ..................................................... 1

    a. Term 1: "the first clock signal is independent from the second clock signal" ............... 1

    b. Term 2: "located in a common region that is substantially central to the first set of cores and second set of processor cores" ..................................................................... 8

III. CONCLUSION.................................................................................................................. 12

# **TABLE OF AUTHORITIES**

**Cases**

*BASF Corp. v. Johnson Matthey Inc.*,
 875 F.3d 1360 (Fed. Cir. 2017) ................................................................................................ 10

*Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*,
 879 F.3d 1332 (Fed. Cir. 2018) ................................................................................................ 10

*Power Mosfet Techs., L.L.C. v. Siemens AG*,
 378 F.3d 1396 (Fed. Cir. 2004) ................................................................................................ 11

*Redstone Logics LLC v. Qualcomm Inc.*,
 No. 7:24-cv-231-ADA, Dkt. 43 (W.D. Tex. Oct. 15, 2025) .................................................. 2, 8

*Thorner v. Sony Computer Ent. Am. LLC,*
 669 F.3d 1362 (Fed. Cir. 2012) .................................................................................................. 5

I. INTRODUCTION

U.S. Patent No. 8,549,339 (Dkt. No. 1-1; the "'339 Patent") teaches an innovative multi-core processor with sets of processor cores. In particular, the '339 Patent teaches various means of coordinating not just the individual cores of the multi-core processor but the sets of processor cores that operate as a unit. *See* '339 Patent at 2:61-3:15. While previous techniques focused on coordination among individual cores, the '339 Patent focuses on coordination as to sets of cores. Despite this focus, NVIDIA's claim construction arguments disregard the importance of these sets. Furthermore, NVIDIA disregards the portions of the claims and prosecution history directed to the sets of cores and associated PLLs, in places skipping over that discussion and instead incorrectly suggesting that the Applicant made an entirely different argument. Because NVIDIA's argument do not consider the full context of the claims, specification, or prosecution history, the Court should instead give both terms their plain and ordinary meaning.

II. DISPUTED TERMS REQUIRING CONSTRUCTION

   a. **Term 1: "the first clock signal is independent from the second clock signal"**

| '339 Patent Claims | Redstone's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| Claims 1, 21 | Plain and ordinary meaning | "the first and second clock signals depend from different reference oscillator clocks" |

This term is simple and clear on its face, a first signal that does not depend on a particular second signal. But NVIDIA asks the Court to consider another, unclaimed signal both claimed signals may not depend from and instead both signals must "depend from different reference oscillator clocks." Beyond turning the claim on its head and dictating what the signals must depend

1

from as opposed to what they must be independent from, NVIDIA's construction is flawed. It implies third and fourth signals (the "different reference oscillator clocks") that have no basis in the claim language or the intrinsic record. Moreover, NVIDIA can identify nowhere in the relevant art where "independence" of one signal from a second implicates a third signal. NVIDIA's construction must be rejected. The Court should instead adopt either Redstone's construction or the Court's prior construction: "plain-and-ordinary meaning, wherein the plain meaning does not require that the first and second clock signals depend from different reference oscillator clocks." *Redstone Logics LLC v. Qualcomm Inc.,* No. 7:24-cv-231-ADA, Dkt. 43 at 19 (W.D. Tex. Oct. 15, 2025) ("*Qualcomm*").

This plain meaning is clear and when the prosecution history around the relevant amendment is considered there is no special meaning. During prosecution, the Examiner initial rejected the independent claims as anticipated by Jacobowitz. Dkt. 25-2, Exhibit 2 ("Prosecution History") at 67-77. In an Examiner Interview, the Applicant argued that Jacobowitz did not include a first and second clock signal because it offered only a single clock signal provided to both local oscillators/PLLs disclosed by Jacobowitz, not two "different/independent clock signals" as shown in Figure 3 of the patent. *See* Prosecution History at 95. The Examiner agreed that Jacobowitz and Figure 3 were different but disagreed as to Jacobowitz disclosing the first and second clock signal. *Id*. The Examiner explained because, under the broadest reasonable interpretation, the then-current claim language, that included no mention of any PLLs, could read not just on the signal input into Jacobowitz's local oscillators/PLLs but "also reads on the output of the PLLs shown in applicant's figure 3." *Id*. In effect, the Examiner found that the output of a single oscillator as in Jacobowitz once processed through two different local oscillators/PLLs could be "different/independent" as the Applicant suggested would distinguish Jacobowitz. With this understanding of Jacobowitz and

2

the claims, the Applicant amended the independent claims to distinguish the input and output of the PLLs and specify that the inputs of the two PLLs must be independent:

| Original Claim Language | Amended Language |
|---|---|
| 1: A multi-core processor, comprising:<br>A first set of processor cores of the multi-core processor, wherein each dynamically receive a first supply voltage and a first clock signal;<br>A second set of processor cores of the multi-core processor, wherein each processor core form the second set of processor cores is configured to dynamically receive a second supply voltage and a second clock signal; and<br>An interface block coupled to the first set of processor cores and also coupled to the second set of processor cores, wherein the interface block is configured to facilitate communication between the first set of processor cores and the second set of processor cores. | 1: A multi-core processor, comprising:<br>A first set of processor cores of the multi-core processor, wherein each processor core from the first set of processor cores is configured to dynamically receive a first supply voltage and a first output clock signal of a first phase lock loop (PLL) having a first clock signal as input;<br>A second set of processor cores of the multi-core processor, wherein each processor core from the second set of processor cores is configured to dynamically receive a second supply voltage and a second output clock signal of a second PLL having a second clock signal as input, wherein the first supply voltage is independent from the second supply voltage, and the first clock signal is independent from the second clock signal; and<br>An interface block coupled to the first set of processor cores and also coupled to the second set of processor cores, wherein the interface block is configured to facilitate communication between the first set of processor cores and the second set of processor cores. |

Prosecution History at 83.

The new claims did not read on Jacobowitz even under the broadest reasonable interpretation. The applicant explained Jacobowitz fails to teach "a first output clock signal of a first PLL having a first clock signal as input and a second output clock signal of a second PLL having a second clock signal as input" or "the first clock signal is independent form the second clock signal," because Jacobowitz merely distributes a single signal, $V_R$, to the local oscillators.

3

*Id*. at 89-90. The first and second clock signals cannot be the same signal as one signal is not two signals and a single signal cannot be independent of itself. Because the claims now distinguished between the input and output signals of the PLLs it is irrelevant that Jacobowitz's output clock signals are independent of each other as was previously critical.[1]

The Applicant and Examiner only address "independent" one other time, in connection with Kim.[2] This discussion aligns with both the discussion of Jacobowitz and the Court's construction that "independence" is unrelated to a reference oscillator. The Applicant first explains that Kim fails to disclose the claimed voltage arrangement, including that the voltage signals are independent, because "Kim *discloses having each core, not a set of processor cores*, received a $V_{DD}$ (i.e., $V_{DD1}$, $V_{DD2}$, $V_{DD3}$, $V_{DD4}$)." *Id*. at 90 (emphasis added). In other words, there is not a first and second voltage because the claimed first and second voltage supply sets of cores, not individual cores, and no voltage in Kim supplies more than a single core. Without the claimed voltages, they cannot meet any of the further limitations, such as being independent of one another.

The Applicant further explains Kim fails to disclose the *entire* claimed clock signal arrangement. The Applicant explained Kim's "apparatus comprising a multi-core processor … having a single clock source … [that] is then processed … and *provided to each of the cores*" does not disclose any of the claimed clock signals or that the first and second clock signals are independent. *Id*. at 90-91 (emphasis added). The Applicant repeats this for claims 10-11, 15, 18, and 22-23: "neither Jacobowitz nor Kim discloses having *sets of processor cores* configured to

---

[1] The applicant also distinguished the voltage architecture of Jacobowitz, explaining "Jacobowitz is silent with respect to at least the recited different sets of processor cores configured to receive independent supply voltages." *See* Prosecution History at 89.

[2] Notably, despite being the central basis for NVIDIA's prosecution history argument, the Examiner never considered Kim as part of an obviousness ground for the independent claims. *See* Prosecution History at 73-76.

4

receive multiple and independent clock signals." *Id*. at 91 (emphasis added). The Applicant repeatedly identified the same problem for each "independent" limitation: no sets of processor cores. Because there are no sets of processor cores, there are no first and second supply voltages that they are configured to dynamically receive. The same is true of the first and second output clock signals and first and second PLLs. And the same is true for the first and second clock signals as input. Without sets of cores, these signals do not exist to be independent.

In contrast, NVIDIA misconstrues and misquotes the intrinsic evidence. First, the best NVIDIA can say as to the specification is that Figure 3 is "consistent with having multiple reference oscillators." *See* Dkt. 25 at 6. But being "consistent" with a particular construction is not one of the "only two exceptions to [the] general rule" that a term should have its plain and ordinary meaning. *See Thorner v. Sony Computer Ent. Am. LLC,* 669 F.3d 1362, 1365 (Fed. Cir. 2012). As such it has very little bearing on the proper construction of the term.

Second, turning to the prosecution history, NVIDIA can identify neither lexicography nor disclaimer. As to Jacobowitz, NVIDIA contends the explanation that "clock signals 1 through 3 were different/independent clock signals input to the PLLs while Jacobowitz disclosed using a single reference clock" "makes clear that different reference oscillators are required." Dkt. 25 at 7. But any reference to "different reference oscillators" is a creation of NVIDIA. Rather, the cited text contrasts multiple different/independent clock signals *input to multiple PLLs* before reaching cores with a single reference clock. NVIDIA's reading improperly ignores the reference to multiple signals and PLLs and thus what is even being contrasted. As noted above, distinguishing the input and output of PLLs was the key distinction from the broadest reasonable interpretation the examiner considered.

Similarly, as to Kim, NVIDIA reimagines what the applicant argued rather than discuss what was actually argued. NVIDIA contends the applicant argued "Kim 'fails to disclose or teach a first clock signal is independent form the second clock signal' because '[i]nstead, Kim discloses a single clock source.'" Dkt. 25 at 8 (omitting ellipses and added emphasis). While this is *not* what the Applicant argued, NVIDIA treats the "instead" as though it directly contrasts *only* the independent limitation and "a single clock source." Rather, the applicant first explained Kim has a different voltage architecture and then explained that that:

> "In addition, Kim also fails to disclose or teach a first set of processor cores and second set of processor cores configured to dynamically receive a first output clock signal of a first PLL having a first clock signal as input and a second output clock signal of a second PLL having a second clock signal, respectively. In addition, the first clock signal is independent from the second clock signal. Instead, Kim discloses the apparatus comprising a multi-core processor (i.e., 100 in FIG. 1 or 200 in FIG. 2) having a single clock source (i.e., 170 in FIG. 1 or 270 in FIG. 2). The clock signal from this single clock source is then processed (i.e., divided or multiplied) and provided to each of the cores. See Kim, paragraphs [0024]-[0025] and FIGs 1 -2."

Prosecution History at 90-91. In reality, the applicant contrasted the entire claimed clock structure *and* the independent limitation with Kim's apparatus having a single clock source and the clock signal is processed and provide to each of the cores. *Id*. There is no statement that "Kim's 'single clock source' [is] the only reason why the reference's clock signals are not independent"; it is unclear how NVIDIA has drawn that incorrect conclusion. *See* Dkt. 25 at 10. Indeed, NVIDIA cites nothing for this contention, not even its own expert. There is no disclaimer here, but if there were it would have to narrowly exclude the entirety of what the Applicant contrasted from Kim, not merely pick NVIDIA's favorite difference, i.e. Kim's "apparatus comprising a multi-core processor;" "a single clock source;" *and* "[t]he clock signal from the single clock source is then processed and provided to each of the cores."

6

And, to be clear, the applicant did not suggest that Kim's clock signals 262, 264, 266, and 268 are not independent because they all originate from the same clock source. First, there is no indication that the applicant even considered these signals to be a first or second clock signal as input to a first and second PLL as required by the claim. Indeed, each of the PLLs these signals feed into only relate to a single core, not a set of cores as claimed. Dkt. 25-2, Exhibit 4 ("Kim") at Fig. 2. Second, there is no indication that the Applicant understood that these signals could even be different or changed independently as would be required by the plain meaning of "independent." Kim explains the output of PLL 260 is a "first multiple of the clock frequency provided by the clock source 270." Kim at [0025]. Nothing in this paragraph cited by the Applicant indicates these signals are or could be different. If these signals are the same, they of course cannot be a first and second clock signal that are independent from one another, without consideration of an unclaimed third signal.

Last, NVIDIA points to two dictionary definitions. As the limitation is clear on its face, no extrinsic evidence should be considered. Even so, NVIDIA's dictionary definitions do not support its construction. Neither suggests that a first signal being independent from a second signal has anything to do with a third signal. NVIDIA's first definition suggests the first signal does "not depend upon [the second signal] for its value." Dkt. 25 at 10. This does not implicate a third signal. NVIDIA's second definition merely provides the first signal be "separate" from the second signal. *Id*. Again, there is no reference to a third signal. NVIDIA's extrinsic evidence offers no basis to diverge from the plain and ordinary meaning.

Because the plan language of the claim term is clear and no alternative construction was established in the prosecution history, this term should be given its plain meaning. If any, the Court should adopt its prior construction of this Term: "plain-and-ordinary meaning, wherein the plain

7

meaning does not require that the first and second clock signals depend from different reference oscillator clocks." *Qualcomm*, Dkt. 43 at 19.

### b. Term 2: "located in a common region that is substantially central to the first set of cores and second set of processor cores"

| '339 Patent Claims | Redstone's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| Claims 14 | Plain and ordinary meaning | Indefinite |

NVIDIA argues that both "common region" and "substantially central" render this term indefinite. But NVIDIA does little to engage with the actual claim language. For the first term, NVIDIA broadly contends "vagueness" without addressing the claim language. For the second term, NVIDIA ignores the teachings of the specification and the term's role in the claim as a whole. As such, this term should be given its plain and ordinary meaning.

First, "region" is clearly described in the patent. Rather than merely relating to an undefined area, "region" is used throughout the patent to refer to sections of the multi-core processor. *See* '339 Patent at 2:20-21 ("The multi-core processor 100 may be further divided into regions.") The specification explains these regions "correspond to rows of the two-dimensional array, and the regions may or may not be overlapping." *Id*. at 2:22-23. These "two-dimensional array[s]" are the rows of processors or stripes that can make up sets of processor cores. *Id*. at 2:24-27. This use is continued throughout the claims. *See e.g. id*. at Cl. 8 ("wherein the first set of processor cores are located in a first region of the multi-core processor, and the second set of processor cores are located in a second region of the multi-core processor.") A POSITA would understand that a "region" corresponds with the subdivision of the multi-core processor containing the claimed sets of processor cores.

With the understanding that a "region" is a subdivision of the multi-core processor containing the claimed sets of processor cores, "common region" is no mystery. There is no suggestion that "common" has anything but its plain and ordinary meaning as a modifier; thus, "common region" is merely a *common* subdivision of the multi-core processor containing the claimed sets of processor cores. As claim 14 claims a first and second set of processor cores, the "common region" would include both sets. *See* '339 Patent at Cl. 14. As claim 14 further claims "one more control blocks located in a common region," the "common region" of claim 14 includes both sets of processor cores and the control block(s). *Id*.

NVIDIA gives no support for its contention that it is unclear what the "common region" includes. As noted above, the specification and the claim language makes clear exactly what is included; NVIDIA does not contradict Redstone's showing. As to the claim language, NVIDIA merely contends it fails to "clearly delineate which of those are part of the claimed 'common region.'" Dkt. 25 at 13. But this generic, conclusory statement fails to meet NVIDIA's burden; for example, NVIDIA offers no explanation of how the claim lacks clear delineation.. As to the specification, NVIDIA contends that because the specification explains control blocks "may be arranged in a common area" without also mentioning cores in that particular statement, there is some confusion about whether sets of cores are in the common region. Dkt. 25 at 14. But no such confusion exists. The specification not repeating all the contents of a region/area every time it is raised does not reach the level of indefiniteness. NVIDIA fails to establish indefiniteness as to "common region."

Similarly, NVIDIA's series of rhetorical questions are inapposite. NVIDIA's questions presuppose "common region" has a special meaning apart from common and region. As noted above, it does not. Again, because a region is a subdivision of the multi-core processor containing

9

one set of cores, a common region when considering two sets of cores, is the subdivision of the multicore processor common to the two sets of cores. As NVIDIA does not, and cannot, show that a POSITA would not understand "common" in these circumstances, "common region" is not indefinite.

NVIDIA's argument as to "substantially central" fares no better. For a "substantially" term to be definite, "[a]ll that is required is some standard for measuring the term of degree." *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1346 (Fed. Cir. 2018). The patent provides that guidance.

First, Claim 14 claims "a common region that is substantially central" and the "control blocks [are] located in [the] common region." As explained above, "common region" is the region of the multi-core processor that is common to the first and second set of processor cores. Further requiring that this region to contain the control blocks and be "substantially central" to the sets of processor cores is rudimentary and described in the specification.

The patent describes three possibilities for the location of the control blocks: "two different sides of the multicore processor," "the same side of the multi-core processor," or "in a common area located near the center of the multi-core processor." '339 Patent at 2:31-40. Put differently, the patent describes putting the control blocks on the sides of the processor or in an area/region within the processor. A POSITA would understand claim 14 is directed to this latter example where a common area/region is central and contains the control blocks. As such a POSITA would understand that for the "common region" of two sets of cores to be substantially central merely requires it to be within the multi-core processor as opposed to the sides. While "within the multi-core processor" is a broad construction, breadth is not indefiniteness. *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1367 (Fed. Cir. 2017) ("the inference of indefiniteness simply from

the scope finding is legally incorrect: 'breadth is not indefiniteness.'"). This meets the Federal Circuit's requirement for "some standard for measuring the term of degree."

To the extent NVIDIA argues this reading of "common region" as simple a subdivision of the multi-core processor shared by the two sets of processors and "substantially central" as merely within the multi-core processor renders one or the other a superfluity, such superfluity is irrelevant. Even if a subdivision of the multi-core processor within the multi-core processor is redundant, that does not and cannot render the claim indefinite. The cannon against superfluity is not absolute, "where neither the plain meaning nor the patent itself commands a difference in scope between two terms, they may be construed identically." *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1409–10 (Fed. Cir. 2004).

NVIDIA's counter-arguments only characterize "substantially central" as a term of degree and asks the wrong questions while not engaging with the claim itself. NVIDIA relies on baseless, invented figures to support its argument as to "substantially central." *See* Dkt. 25 at 11-12. But such figures do not fairly or accurately show how a POSITA would consider this claim. A POSITA would not be concerned with random arrangements of cores and control blocks when considering the scope of "substantially central." Rather, a POSITA would consider functional arrangements. Tellingly, NVIDIA and its expert Dr. Pedram do not even purport to show that the hypotheticals comport with reality. Rather, NVIDIA merely has Dr. Pedram conclude these figures are "[t]wo potential multi-core processor physical configurations [that] illustrate difficulty in determining whether a 'common region' is 'substantially central' …" Dkt. 25-1 at ¶66. There is no explanation as to why these arrangements would be considered or even be functional. *See id*. This is because they are not. In reality, multi-core processors are compact and interconnected. Indeed, it is not clear that the figures even show a multi-core processor as opposed to a random assortment of

disconnected cores. At the least there would need to be connections between the sets of cores and the control blocks. The failure to show any of the connections is indeed key. First as noted above, it is the common region that is substantially central. To be helpful, the figure would need to show the common region. While the figure shows individual regions for the sets of cores, there are none of the connections between the sets to show a common region between them. Without showing what is claimed to be "substantially central," NVIDIA's figures cannot meet its burden.

NVIDIA's arguments regarding the specifications similarly fail. NVIDIA recognizes that the relevant portion of the specification describes a common area near the center of the multi-core processor, but contends "'near the center' is just as vague as 'substantially central.'" Dkt. 25 at 13. That is full extent of NVIDIA's review of the specification and NVIDIA ignores the context of "near the center." As explained above, that context contrasts the sides of multi-core processor with "near the center." *See* '339 Patent at 2:31-40. This makes clear, the importance of center/central is in distinguishing from the sides. Indeed, this is played out in the claims as well. *Compare id*. at claim 5 (control blocks in the periphery) *with id*. at 14 (control blocks in a common region that is substantially central). While broad, this is definite.

As NVIDIA ignores the specification and use of "common region" and fails to show any real circumstance in which "substantially central" is confusing, it fails to meet its burden to show Claim 14 is indefinite. Claim 14 should be given its plain and ordinary meaning.

### III.   CONCLUSION

For the reasons provided above, all disputed terms should be given their plain and ordinary meaning. Defendant has failed to meet its burden to show any term is indefinite.

Dated: November 17, 2025                              Respectfully submitted,

/s/ *Reza Mirzaie*
RUSS AUGUST & KABAT
Reza Mirzaie, CA Bar No. 246953
Email: rmirzaie@raklaw.com
Marc A. Fenster, CA Bar No. 181067
Email: mfenster@raklaw.com
Neil A. Rubin, CA Bar No. 250761
Email: nrubin@raklaw.com
Christian W. Conkle, CA Bar No. 306374
Email: cconkle@raklaw.com
Jonathan Ma, CA Bar No. 312773
Email: jma@raklaw.com
Joshua Scheufler, TX Bar No. 24123406
Email: jscheufler@raklaw.com
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

Qi (Peter) Tong, TX Bar No. 24119042
Email: ptong@raklaw.com
8080 N. Central Expy., Suite 1503
Dallas, TX 75206
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

*Attorneys for Plaintiff Redstone Logics LLC*

## CERTIFICATE OF SERVICE

    I certify that on November 17, 2025, a true and correct copy of the foregoing document was electronically filed with the Court and served on all parties of record via the Court's CM/ECF system.

                                                  */s/ Reza Mirzaie*
                                                  Reza Mirzaie