IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| REDSTONE LOGICS LLC,<br><br>Plaintiff,<br><br>v.<br><br>NVIDIA CORPORATION,<br><br>Defendant. | CASE NO. 7:25-CV-00184 [ADA]<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT NVIDIA CORPORATION'S
REPLY CLAIM CONSTRUCTION BRIEF**

**TABLE OF CONTENTS**

                                                                                                            **Page**

I. INTRODUCTION ............................................................................................................. 1

II. DISPUTED TERMS ......................................................................................................... 1

    A.    "the first clock signal is independent from the second clock signal" ................. 1

        1.    File history arguments based on Jacobowitz alone establish that NVIDIA's proposed construction is correct ........................................... 2

        2.    File history arguments responding to Jacobowitz combined with Kim also establish that NVIDIA's proposed construction is correct ...... 4

    B.    "located in a common region that is substantially central to the first set of processor cores and the second set of processor cores" ...................................... 7

        1.    Redstone's arguments effectively rewrite claim 14 to omit the "substantially central" requirement .......................................................... 7

        2.    Redstone's criticisms of NVIDIA's exemplary figures lack merit ......... 9

        3.    Redstone's interpretation of "common region" also results in indefiniteness ............................................................................................ 9

III. CONCLUSION ............................................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Allen Eng'g Corp. v. Bartell Indus., Inc.*,
  299 F.3d 1336 (Fed. Cir. 2002)..................................................................................................7

*Amgen Inc. v. Coherus BioSciences Inc.*,
  931 F.3d 1154 (Fed. Cir. 2019)..............................................................................................3, 6

*Chef Am., Inc. v. Lamb-Weston, Inc.*,
  358 F.3d 1371 (Fed. Cir. 2004)..................................................................................................7

*Media Rts. Techs., Inc. v. Cap. One Fin. Corp.*,
  800 F.3d 1366 (Fed. Cir. 2015)................................................................................................10

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
  572 U.S. 898 (2014)...................................................................................................................7

*Saffran v. Johnson & Johnson*,
  712 F.3d 549 (Fed. Cir. 2013)................................................................................................4, 6

*Tech. Props. Ltd. LLC v. Huawei Techs. Co.*,
  849 F.3d 1349 (Fed. Cir. 2017)..............................................................................................3, 6

## I. INTRODUCTION

While NVIDIA focuses on key issues and evidence, Redstone sows confusion. The Court should adopt NVIDIA's positions. Citing explicit statements from the file history for the asserted '339 patent, NVIDIA explains that the applicant overcame multiple prior art references during prosecution by distinguishing a single reference oscillator clock from the claimed "independent" clock signals. It follows that the limitation must require multiple reference oscillator clocks. Redstone reacts by highlighting irrelevant portions of the file history and making arguments contrary to law. The public, including NVIDIA, is entitled to rely on how the applicant defined "independent" clock signals when procuring the patent. Regarding claim 14, Redstone effectively rewrites the claim language and avoids critical questions raised by NVIDIA. Those arguments underscore the uncertainty in the claimed phrases "substantially central" and "common region" and reinforce that the claim is indefinite.

## II. DISPUTED TERMS

### A. "the first clock signal is independent from the second clock signal"

| Claim(s) | Redstone's Proposal | NVIDIA's Proposal |
|---|---|---|
| 1, 21 | Plain and ordinary meaning | "the first and second clock signals depend from different reference oscillator clocks" |

The controlling question is whether a skilled person would conclude from the patent and file history that clock signals based on the same reference oscillator can satisfy the claim requirement that "the first clock signal is independent from the second clock signal." The answer is no because Redstone's predecessor (the applicant for the asserted '339 patent) argued repeatedly that signals from a single reference oscillator are not independent. Those claim-limiting arguments are clear, concise, and persuasive on the point that matters. The resulting construction does not add a third or fourth signal to the claim language, as Redstone asserts. Dkt. 26 at 2. The

-1-

construction clarifies the necessary relationship between the claimed first and second clock signals—they need to depend from different reference sources, as opposed to the same source.

### 1. File history arguments based on Jacobowitz alone establish that NVIDIA's proposed construction is correct

The examiner rejected the original independent and several dependent claims as anticipated by Jacobowitz, including its Fig. 6 and accompanying description. Dkt. 25-2, Ex. 2 at 71-73. As the examiner explained, Jacobowitz disclosed a structure parallel in its composition to Figure 3 of the '339 patent: a multicore processor with two sets of four cores with each set having its own local oscillator. Each "local oscillator" (Jacobowitz's shorthand term for a digitally controlled clock generator, *see* Dkt. 25-2, Ex. 3 ¶ 25) supplied the cores of its own set with a different clock signal: $v_0$ (yellow) for the top set of cores and $v_1$ (green) for the bottom set of cores, as shown in annotated Figure 6 at right. The inputs of both local oscillators were derived from a single reference oscillator ($v_R$). Dkt. 25-2, Ex. 3 ¶¶ 26, 38.



FIG. 6

To overcome the rejection, the applicant amended the claims and distinguished Jacobowitz based on the amendments. The applicant argued in an examiner interview that in "figure 3 of the [applicant's] specification . . . *clock signals 1 through 3 were different/independent clock signals input to the PLLs while Jacobowitz disclosed using a single reference clock*." Dkt. 25-2, Ex. 2 at 95 (emphasis added). Applicant promised to submit narrowing claim amendments to

incorporate that distinction. Two days later, the applicant submitted the following amended claim language, making independence of the two clock signals from each other an explicit, separately-stated claim requirement and adding first and second PLLs to the claims:

> . . . a first <u>output</u> clock signal <u>of a first phase lock loop (PLL) having a first clock signal as input</u>;
>
> . . . a second <u>output</u> clock signal <u>of a second PLL having a second clock signal as input, wherein the first supply voltage is independent from the second supply voltage, and the first clock signal is independent from the second clock signal</u> . . . .

*Id.* at 83. The applicant then argued that Jacobowitz did not satisfy the amended language because "FIG. 6 and all other figures of *Jacobowitz* clearly show that the microprocessor chip (e.g., 600) receives a system reference oscillator clock frequency ($v_R$) and distributes $v_R$ to local oscillators 108." *Id.* at 89. The applicant stated that the single reference oscillator approach of Jacobowitz failed to show (i) PLLs arranged as claimed (Jacobowitz discloses local oscillators) and (ii) "[i]n addition, the first clock signal is independent from the second clock signal, as required in the amended independent claims 1 and 21." *Id.* at 90.

  Redstone argues that the distinction directed to PLLs was enough to distinguish Jacobowitz, making the disclaimer of clock signals from a single reference oscillator immaterial. Dkt. 26 at 2-4. The argument is wrong for two reasons. First, Federal Circuit law is clear that the public is entitled to rely on all grounds raised to distinguish claimed subject matter over the prior art. *Amgen Inc. v. Coherus BioSciences Inc.*, 931 F.3d 1154, 1159-60 (Fed. Cir. 2019) ("So while Amgen did assert multiple reasons for why Holtz is distinguishable, our precedent instructs that estoppel can attach to each argument."). That includes distinctions or arguments that might, in hindsight, have been unnecessary. *Tech. Props. Ltd. LLC v. Huawei Techs. Co.*, 849 F.3d 1349, 1359 (Fed. Cir. 2017) ("[T]he scope of surrender is not limited to what is absolutely necessary to avoid a prior art reference; patentees may surrender more than necessary."); *Saffran v. Johnson &*

*Johnson*, 712 F.3d 549, 559 (Fed. Cir. 2013) ("[A]s we have made clear, an applicant's argument that a prior art reference is distinguishable on a particular ground can serve as a disclaimer of claim scope even if the applicant distinguishes the reference on other grounds as well." (citation omitted)). To overcome the anticipation rejection, the applicant plainly argued that Jacobowitz did not disclose first and second clock signals that were independent of each other because they came from a single reference oscillator. Additional arguments that the applicant advanced do not dilute the force of the single reference oscillator statements.

Second, the applicant could not have distinguished Jacobowitz based solely on its use of the term "local oscillators" (i.e., digitally controlled clock generators) because a PLL is an obvious implementation of a digitally controlled clock generator. It was well known in the art at the time of the alleged invention that PLLs were routinely implemented using digitally controlled clock generators, such as voltage controlled oscillators. Reply Declaration of Dr. Massoud Pedram in Support of Defendant NVIDIA Corporation's Reply Claim Construction Brief ("Pedram Reply Decl.") ¶ 6. Indeed, the Kim reference describes PLLs implemented through voltage controlled oscillators. Dkt. 25-2, Ex. 4 ¶¶ 3-6, 22-25, 32, 36. Whether to use a PLL or another form of digitally controlled clock generator was a known engineering design choice. Pedram Reply Decl. ¶ 6. Accordingly, there is no basis for Redstone's assertion that the PLL structure amendment without the additional, separate claim requirement of independent clock signals would have sufficed to overcome Jacobowitz.

> **2.    File history arguments responding to Jacobowitz combined with Kim also establish that NVIDIA's proposed construction is correct**

Redstone argues that "the Examiner never considered Kim as part of an obviousness ground for the independent claims." Dkt. 26 at 4 n.2. Not so. The examiner rejected original

independent claims 15 and 18 over a combination of Jacobowitz, Kim, and von Kaenel. Dkt. 25-2, Ex. 2 at 75-76.

The applicant's response reinforced the conclusion that the claims do not cover single source clocking arrangements for multi-core processors. The applicant submitted amended claim language that added the independent clock signal requirement to both claims 15 and 18, *id*. at 85-86, and argued that Kim does not "disclose[] having sets of processor cores configured to receive ***multiple and independent*** clock signals," *id*. at 90-91 (emphasis added). Specifically, the applicant argued first that Kim did not teach or disclose multiple PLLs with first and second clock signals as inputs. *Id*. at 90. The applicant further distinguished Kim as lacking independent clock signals:

> In addition, the first clock signal is independent from the second clock signal. Instead, *Kim* discloses the apparatus comprising a multi-core processor (i.e., 100 in FIG. 1 or 200 in FIG. 2) ***having a single clock source*** (i.e., 170 in FIG. 1 or 270 in FIG. 2). The clock signal from this single clock source is then processed (i.e., divided or multiplied) and provided to each of the cores. See *Kim,* paragraphs [0024]-[0025] and FIGs 1-2.

*Id.* at 90-91 (emphasis added). The applicant's answer for why Kim had neither multiple signals nor independent clock signals was the same: Kim used a single clock source.

Redstone's principal response to the applicant's unambiguous distinction between (i) single reference clock implementations such as Kim and (ii) the independent clock signals claimed in the '339 patent is to repeatedly reference other points of distinction that the applicant made about Kim. Dkt. 26 at 6. Thus, Redstone argues that the applicant also sought to distinguish Kim as failing to disclose multiple cores organized into two or more sets of cores, first and second supply voltages that are independent between the cores, and a PLL for each core with a separate input clock signal. The problem for Redstone is that in addition to other points of distinction, the applicant stated that a single source clocking arrangement for a multi-core processor will not have

first and second input clocks that are independent of each other, as the claims expressly require. Redstone cannot now pick and choose among the applicant's arguments. When an applicant provides several reasons for distinguishing prior art during prosecution, each reason creates an independent basis for disclaimer. *Amgen*, 931 F.3d at 1159; *Tech. Props.*, 849 F.3d at 1359; *Saffran*, 712 F.3d at 559.

Redstone also relies on the Court's earlier decision in the *Qualcomm* matter to undermine NVIDIA's construction. The *Qualcomm* decision posits that the applicant might have believed that Kim's "PLL1 216, PLL2 226, PLL 236, and PLL 246 could not be independently varied and distinguished the claimed invention accordingly." *Redstone Logics LLC v. Qualcomm Inc.*, No. 7:24-cv-00231-ADA (W.D. Tex. Oct. 15, 2025), Dkt. 43 at 19. But NVIDIA respectfully submits that the applicant did not say that, and Kim indicates that its PLLs could be used to dynamically vary the frequency on a core-by-core basis. For example, the portion of Kim to which the applicant cited in its response to the examiner's rejection describes dynamic individual clock adjustments to each PLL to optimize performance of each "respective" core. Dkt. 25, Ex. 2 at ¶ 25 ("[T]he main controller is configured to adjust . . . the reference input clock frequency provided to the respective core . . . [to] optimize[] a respective core performance . . . ."). Courts "hold patentees to the actual arguments made" during prosecution, "not the arguments that could have been made." *Tech. Props.*, 849 F.3d at 1359.

It is clear that Kim disclosed a system of multiple, individually controlled PLLs receiving a single reference clock input in which a PLL could dynamically adjust the clock frequency it delivered to its assigned processor core. The applicant plainly distinguished such single reference source arrangements from the claimed independent clock signals.

    **B.**     **"located in a common region that is substantially central to the first set of processor cores and the second set of processor cores"**

| Claim(s) | Redstone's Proposal | NVIDIA's Proposal |
|---|---|---|
| 14 | Plain and ordinary meaning | Indefinite |

Claim 14 does not inform a POSITA of claim scope with reasonable certainty and is therefore indefinite. *Nautilus*, *Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). Dkt. 25 at 10-14. Two phrases are problematic: "substantially central" and "common region." Both are infected with ambiguity that neither the record nor Redstone's counterarguments resolve.

    **1.**     **Redstone's arguments effectively rewrite claim 14 to omit the "substantially central" requirement**

Claim 14 requires "one or more control blocks [to be] located in a common region that is substantially central to the first set of processor cores and the second sets of processor cores." Redstone agrees that "substantially central" is a term of degree, Dkt. 26 at 10, but replaces "substantially central to the first set of processor cores and the second set of processor cores" with "within the multi-core processor," *id*. at 10-11. The effective rewrite is illustrated in the table below.

| Rewritten Claim 14 | The multi-core processor of claim 1, wherein the first set of processor cores and the second set of processor cores are configured to receive one or more control signals from one or more control blocks located in a common region that is ~~substantially central to the first set of processor cores and the second set of processor cores~~ **within the multicore processor**. |
|---|---|

Redstone's approach is fatally flawed. First, the Federal Circuit does not permit rewriting claims to preserve their validity. *See, e.g.*, *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1349 (Fed. Cir. 2002) (rejecting patent owner's argument that "perpendicular" should be read to mean "parallel"); *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004) (declining to replace "to" with "at"; the court "construe[s] the claim as written, not as the

patentees wish they had written it"). Here, the applicant selected the phrase "substantially central." Redstone must live with the claim as written.

Second, "within the multicore processor" is not interchangeable with "substantially central" to the two sets of processor cores. The two formulations carry different meanings. "Central" is an adjective that refers to the center of the recited core sets. "Substantially" is an adverb that modifies "central" to make clear that the "common region" need not be perfectly central to the core sets, though it leaves unspecified how central the region needs to be. By contrast, Redstone's proposed "within" the multicore processor would mean the common region could be anywhere inside the processor, regardless of where the core sets might be located. That would eviscerate "substantially central" to the core sets as a limitation on the location of the common region, fundamentally altering the reach of the claim. The issue is not a matter of superfluity or redundancy, as Redstone asserts. Dkt. 26 at 11. It is an attempted claim rewrite to avoid indefiniteness, which settled case law forbids.

Third, contrary to Redstone's argument, the specification fails to render claim 14 definite. Redstone points to the patent's teaching that control blocks could be arranged on "two different sides" of the multi-core processor or arranged "in a common area located near the center." *Id*. at 10, 12. That argument skips over that the actual phrase in the claim is "substantially central," which the specification does nothing to clarify. The most the specification has to say is that the common area can be located "near" the center without any indication of how near and without saying anything about the proximity of the core sets. While the center of the processor certainly differs from the "sides" of the processor, the specification says nothing to clarify what "substantially central" to the sets of processor cores means. Dkt. 25 at 13.

### 2. Redstone's criticisms of NVIDIA's exemplary figures lack merit

Redstone attacks figures that NVIDIA uses to illustrate issues with "substantially central," asserting they do "not fairly or accurately show how a POSITA would consider [claim 14]." Dkt. 26 at 11-12. That argument is both unsupported and incorrect. First, while NVIDIA cites testimony from Dr. Pedram relating to the figures, Redstone repeatedly invokes a POSITA without providing any expert testimony. Redstone's statements are pure attorney argument. Second, Redstone argues that the figures fail to show "functional arrangements" because they omit "connections" between cores and control blocks. *Id*. But a POSITA understands that such connections are necessary for a processor to function and need not be shown. Pedram Reply Decl. ¶ 7. Redstone recognizes as much by admitting that "multi-core processors are . . . interconnected." Dkt. 26 at 11. Third, contrary to Redstone's suggestion that the figures do not "comport with reality," *id*., they resemble real-world layouts of two or more core sets, Pedram Reply Decl. ¶¶ 8-10. Fourth, although Redstone faults the figures for not showing the "common region," Dkt. 26 at 12, NVIDIA explained that the "common region" includes at least the control blocks shown in the figures, while noting that a POSITA cannot define the phrase with reasonable certainty, Dkt. 25 at 11-14. Even if "common region" could be reasonably defined, it is unclear when that region is "substantially central" to the core sets, which renders claim 14 indefinite.

### 3. Redstone's interpretation of "common region" also results in indefiniteness

Redstone's construction for "common region" exacerbates the uncertainty about claim scope. Redstone argues that the "common region" includes the claimed core sets. Dkt. 26 at 9. But the specification suggests otherwise. The patent describes a "common area" that includes just the control blocks with no mention of the core sets. Dkt. 25-2, Ex. 1 at 2:37-40. As a result, there

-9-

is no clear answer to the fundamental question of whether the "common region" includes the claimed processor cores. Dkt. 25-1 ¶¶ 56-60. That issue renders claim 14 indefinite. *Media Rts. Techs., Inc. v. Cap. One Fin. Corp.*, 800 F.3d 1366, 1371 (Fed. Cir. 2015) ("[A] claim is indefinite if its language 'might mean several different things and no informed and confident choice is available among the contending definitions.'" (citation omitted)).

If the "common region" included the claimed core sets, as Redstone argues, intractable questions would still remain. For example, it is unclear in that case how close to one another the control blocks and core sets would need to be to qualify as being in a "common region." It is equally unclear whether the control blocks and core sets would need to be intermingled with each other for them to reside in a "common region." Dkt. 25 at 14; Dkt. 25-1 ¶¶ 60, 68. Redstone attempts to dismiss the problem by declaring that the claimed "common region" is the "subdivision of the multicore processor common to the two sets of cores." Dkt. 26 at 9-10. But that simply begs the same questions. How close to the control blocks must the core sets be? Also, must the core sets and control blocks be comingled within Redstone's "subdivision?"

### III.     CONCLUSION

NVIDIA respectfully requests that the Court adopt its proposed construction for the "independent" limitation and find claim 14 indefinite.

Dated: December 5, 2025                                  Respectfully submitted,

/s/ *Tyler R. Bowen*
Chad S. Campbell, Bar No. 012080
Tyler R. Bowen, Bar No. 025376
Jaymin Patel, Bar No. 037693*
Elizabeth J. Baxter, Bar No. 037969*
**PERKINS COIE LLP**
2525 E. Camelback Road, Suite 500
Phoenix, Arizona 85016-4227
Tel.: 602-351-8000
Fax: 602-648-7000
CSCampbell@perkinscoie.com
TBowen@perkinscoie.com
JPatel@perkinscoie.com
EBaxter@perkinscoie.com

Philip A. Morin, Bar No. 256864*
**PERKINS COIE LLP**
11452 El Camino Real, Suite 300
San Diego, California 92130-2080
Tel.: 858-720-5700
Fax: 858-720-5799
PMorin@perkinscoie.com

Shaun W. Hassett, SBN 24074372
Michael E. Jones, SBN 10929400
**POTTER MINTON, P.C.**
102 North College, Suite 900
Tyler, Texas 75702
Tel.: 903-525-2272
Fax: 903-531-3972
ShaunHassett@potterminton.com
MikeJones@potternminton.com

*Attorneys for Defendant NVIDIA Corporation*

*Admitted *Pro Hac Vice*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been filed on December 5, 2025 and made available to all counsel of record via the Court's CM/ECF system.

/s/ Indy LaFever
Indy LaFever