**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

REDSTONE LOGICS LLC,

               Plaintiff,

v.

NVIDIA CORPORATION

               Defendant.

Case No.  7:25-cv-000184-ADA

## PLAINTIFF'S SURREPLY CLAIM CONSTRUCTION BRIEF

## <u>TABLE OF CONTENTS</u>

I.    TERM 1: "THE FIRST CLOCK SIGNAL IS INDEPENDENT FROM THE SECOND CLOCK SIGNAL" ................................................................................................................ 1

II.   TERM 2: "LOCATED IN A COMMON REGION THAT IS SUBSTANTIALLY CENTRAL TO THE FIRST SET OF PROCESSOR CORES AND SECOND SET OF PROCESSOR CORES" ........................................................................................................... 4

III.  CONCLUSION ............................................................................................................... 10

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Computer Docking Station Corp. v. Dell, Inc.*,
    519 F.3d 1366 (Fed. Cir. 2008) ................................................................................ 3

*Intel Corp. v. VIA Techs., Inc.*,
    319 F.3d 1357 (Fed. Cir. 2003) ................................................................................ 7

*Omega Eng'g, Inc, v. Raytek Corp.*,
    334 F.3d 1314 (Fed. Cir. 2003) ................................................................................ 3

*Redstone Logics LLC v. Qualcomm Inc. et al*,
    Case No. 7:24-cv-00231-ADA, Dkt. 29 (W.D. Tex. May 9, 2025) ......................... 7

*Trivascular, Inc. v. Samuels*,
    812 F.3d 1056 (Fed. Cir. 2016) ................................................................................ 1

## I.   TERM 1: "THE FIRST CLOCK SIGNAL IS INDEPENDENT FROM THE SECOND CLOCK SIGNAL"

NVIDIA's argument is flawed from the start. The controlling question, properly stated is if the applicant made a clear disavowal of "independent" to divorce it from its plain and ordinary language or otherwise acted as its own lexicographer to define "independent" as to require "depend[ence] from different reference oscillator clocks." NVIDIA misstates the controlling question as what might be "concluded" because it cannot show a "clear and unmistakable disclaimer." *See Trivascular, Inc. v. Samuels*, 812 F.3d 1056, 1063–64 (Fed. Cir. 2016).

First, considering Jacobowitz, there is no disavowal or lexicography. Rather, NVIDIA confuses the case law and the applicant's arguments. The applicant explained that "*Jacobowitz* clearly show that the microprocessor chip [] receives a system reference oscillator clock frequency []and distributes $V_R$ to local oscillators[]." Prosecution History at 89. The applicant argued this "fails to disclose or teach" the claimed "first output clock signal of a first PLL having a first clock signal as input and a second output clock signal of a second PLL having a second clock signal as input, respectively," e.i. that Jacobowitz fails to disclose either the first or second clock signal as well as several other limitations. *Id*. at 89-90. Then, the applicant adds Jacobowitz also fails to teach the first clock signal is independent from the second clock signal. *Id*. at 090. NVIDIA says the independent limitation is not met because the first and second clock signals shown in Jacobowitz Fig. 6 come from a common source, but this is only one, remote, possibility that was never adopted by the applicant. Rather, the applicant's prior sentence clarifies why the independent limitation cannot be met by Jacobowitz, because Jacobowitz fails to disclose the first and second clock signals. If the signals are not present, they also cannot be independent. No further statement is made, certainly no clear and unmistakable disavowal.

NVIDIA's reference to case law that estoppel attaches to each argument made by the applicant, is inapposite. Such case law requires such an argument to have actually been made. Here, NVIDIA is unable point to a conscience quotation from the prosecution history and must instead recreate the argument it would have the applicant make. While it is true that recognizing that Jacobowitz also fails to disclose the independent limitation was unnecessary, as explained above, it does not support NVIDIA's position as there is a clearer alternative reasoning for applicant's statements. That being because there are no first and second clock signals, they cannot be independent. This defeats any argument for a clear and unmistakable disclaimer.

Likewise, the applicant's discussion of Kim offers no disclaimer as to the independent limitation, much less the one proposed by NVIDIA. The best NVIDIA can even argue is "[t]he applicant's response reinforced the conclusion that the claims do not cover single source clocking arrangements for multi-core processors." Dkt. 28 at 5. Reinforcing NVIDIA's conclusion is not a clear and unmistakable disavowal. No such disavowal can be found in the prosecution history as to Kim. Indeed, just as explained with Jacobowitz the applicant explained Kim did not disclose a first and second, i.e. "multiple," clock signals, so there is nothing to be "independent." As such the "independent" limitation is not taught.

NVIDIA insists that a single reference to "a single clock source" must amount to a limitation, it does not. The applicant did not disclaim every "single source clocking arrangements for multi-core processors," instead it made targeted arguments as to Kim. Indeed, NVIDIA's argument ignores the rest of the Applicant's argument that Kim's "apparatus comprising a multi-core processor" "having a single clock source" "[t]he clock signal from this single clock source is then processed" "and provided to each of the cores" does not meet the limitation. Prosecution history at 90-91. If there is disclaimer here, NVIDIA may not pick and choose its favored basis, it

must take everything. *See Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1326 (Fed. Cir. 2003); *see also Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1378 (Fed. Cir. 2008) (an applicant's statements "must always receive consideration in context"). Such a construction would provide the "independent limitation" excludes "a single clock source wherein the clock signals is then processed and provided to each of the cores," rather than just barring a single clock source. But this is already clear from the claimed arrangement of PLLs and clock signals and thus unnecessary.

NVIDIA's attempt to distance itself from this fact fails. The Applicant did not make multiple arguments as to why Kim failed to teach the "independent" limitation. Rather the applicant explained that Kim failed to teach both a first and second set of processor cores, clock signals, and PLLs *and* the "independent" limitation. This is clear by the Applicant's use of "[i]n addition" to delineate both sets of limitations. *See* Prosecution History at 90. In contrast, the Applicant's explanation for why both limitations are not met is not so arranged. Rather, the Applicant explains "[i]nstead" Kim discloses its arrangement with a single clock source where the. Clock signal from the clock source is provided to each of the cores. *Id*. at 90-91. This is singular argument, or at the very least not a clear and unmistakable set of two arguments.

Even if the applicant's first and second sentences where two arguments, there is still no clear and unmistakable disavowal of just a single clock source. The relevant sentence reads: "Instead, *Kim* discloses the apparatus comprising a multi-core processor[] having a single clock source." *Id*. at 90. It is not *an* apparatus comprising a multi-core processor having a single clock source that the Applicant distinguished but *the* apparatus from Kim. Put differently the applicant distinguished *Kim's* multi-core processor, not just any single clock source multi-core processor.

As explained in Redstone's responsive brief, this is significant. *See* Dkt. 26 at 7. NVIDIA has no explanation for why it may ignore this distinction to find a clear and unmistakable disavowal.

NVIDIA's final argument likewise only shows that its construction is not clear from the prosecution history. In attempting to distinguish the Court's reasoning in *Qualcomm*, the best NVIDIA offers is that singular cores may receive "dynamic individual clock adjustments." Dkt. 28 at 6. But the claims never call for individual cores to be provided clock signals, rather all clock signals are provided to *sets* of processor cores. NVIDIA's argument only further underscores that the basis to distinguish Kim from the claims was its failure to teach sets of cores and even the claimed clock signals, not the singular clock source.

Because NVIDIA cannot identify either lexicography or a clear and unmistakable disavowal, the Court should reject NVIDIA's construction. The Court should instead provide the "independent" limitation with its plain and ordinary meaning or simply enter its prior construction.

## II.    TERM 2: "LOCATED IN A COMMON REGION THAT IS SUBSTANTIALLY CENTRAL TO THE FIRST SET OF PROCESSOR CORES AND SECOND SET OF PROCESSOR CORES"

Here too, NVIDIA's arguments misapply the case law, argue against a strawman, and improperly seek to introduce new evidence and argument in reply. NVIDIA's suggestion that Redstone is "rewriting" the term to preserve its validity is flawed and entirely unsupported. Instead of addressing Redstone's argument head on, NVIDIA merely compares the grammar of the results. Then to fix its fatally conclusory expert declaration, NVIDIA merely offers a new, equally conclusory declaration in reply. Such arguments are ineffective and such a declaration should be struck. Because NVIDIA is unable to show claim 14 is indefinite by clear and convincing evidence, it should be given its plain and ordinary meaning.

NVIDIA first argues that "Redstone's arguments effectively rewrite claim 14 to omit the 'substantially central' requirement." This is blatantly false. As explained in Redstone's responsive

brief, based on the clear meaning of "common region" overlapping with "substantially central to the first set of processor cores and the second set of processor cores" claim 14 may be understood "located in a common region that is within the multi-core processor." Dkt. 26 at 10. That is not "rewriting the claim" it is claim construction. Unlike the case law cited by NVIDIA, Redstone is not asking the Court to preserve validity by reading the opposite meaning into the claim such as "perpendicular" as "parallel" or "to" as "at" or some other blatant substitution. Redstone asks the Court to consider based on a POSITA's understanding of "common region" what does it mean for a common region to be "substantially central to the first set of processor cores and the second set of processor cores," it means to be within the multi-core processor.

NVIDIA's next argument comparing "within the multicore processor" with "substantially central" is nonsensical. The very comparison is inappropriate. It takes these terms out of context of claim at issue. There is no point in asking if, in the abstract, "substantially central" to the sets of processor cores means "within the multicore processor," because that is not what is claimed. What is claimed is clearly the "common region" being "substantially central." Thus, the comparison must be if a "common region" being "substantially central" to the sets of processor cores" means a "common region" "within the multi-core processor." It does.

As explained in Redstone's response brief, a "region" is simply a subdivision of a multi-core process containing a set of processor cores. Because "common region" has no special meaning, simply being a "region" that is "common" to the claimed two sets of processor cores, it is simply the subdivision of the multi-core processor common to the two sets of processor cores. The question is then what does it mean for a subdivision of the multi-core processor common to the two sets of processor cores to be "substantially central" to the two sets of processor cores. It

simply means "within the multi-core processor." This does not "rewrite" the claims, it considers them in context and in the detail a POSITA would consider to understand claim 14's scope.

This understanding aligns well with the specifications use of similar terms. Claim 14 claims "one or more control blocks located in a common region…" As described in the specification, these control blocks may be located in one of three arrangements, one side, both sides, or "in a common area located near the center." '339 Patent at 2:31-40. Claim 14 clearly relates to the latter arrangement. This does not "skip over" "substantially central" but rather demonstrates that center/central was only intended to designate inside the multi-core processor over the sides of the processor. This provides the guidance required under Federal Circuit precedent.

Next NVIDIA attempts to defend its unsupported figures. But instead offers new testimony that should have been brought in its opening brief and that ultimately shows how misleading its original figures were. In its responsive brief, Redstone explained NVIDIA failed to demonstrate its figures "would be considered or even functional." Dkt. 26 at 11 Redstone explained "[i]n reality, multi-core processors are compact and interconnected" unlike the "random assortment of disconnected cores" proposed by NVIDIA through Dr. Pedram. *Id*. at 11-12. In response, NVIDIA decries these points as "pure attorney argument." Dkt. 28 at 9. Correct. It does not take an expert to see NVIDIA/Dr. Pedram made no effort to consider a real-world scenario and instead created a misleading graphic as a strawman. Indeed, Redstone's original point is that there is no evidence or testimony that such a graphic would be considered or function beyond a conclusory line by a retained expert. That original point stands unrebutted on the original record and the Court should not consider the figures in NVIDIA's opening brief.

Because it knows the original record fails to make its point, NVIDIA has improperly attempted to supplement the record by providing a new declaration from Dr. Pedram citing new

extrinsic evidence. Because this new material could have, and indeed should have, been raised in NVIDIA's opening brief, it cannot be raised for the first time in its reply brief and should be struck.[1] But more strikingly is Dr. Pedram's reliance on undisclosed extrinsic evidence that NVIDIA should have long known of. Dr. Pedram heavily relies upon *The First Six-Core Intel® Xeon® Microprocessor*. Dkt. 28-1 at ¶8-9. This reference was used by Qualcomm seven months ago, 5 months before NVIDIA's disclosure of extrinsic evidence. *See Redstone Logics LLC v. Qualcomm Inc. et al*, Case No. 7:24-cv-00231-ADA, Dkt. 29 at 4 (W.D. Tex. May 9, 2025); Ex. 1 (NVIDIA Corporation's Preliminary Disclosure of Extrinsic Evidence and Expert Witness). Because of either of these failures, NVIDIA's new declaration should be struck.

Even if the Court were to consider the extrinsic evidence, it still fails to meet NVIDIA's burden. "Any fact critical to a holding on indefiniteness, moreover, must be proven by the challenger by clear and convincing evidence." *Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1366 (Fed. Cir. 2003). But NVIDIA can only provide self-serving, conclusory expert testimony that an expert would consider these figures or the questions they raise. Dr. Pedram never, not even in his new declaration, contends his original figures represent anything a POSITA would consider. *See* Dkt. 25-1 at ¶66 (contending without support that the figures are "[t]wo potential … configurations"); *see also* Dkt. 28-1 at ¶¶8-10 (never contending his original figures reflect anything a POSITA would consider, merely addressing the Intel figures). Such a blatant abandonment of its opening position is telling. Those figures fail to show anything that would enable a POSITA to determine what is a region or even determine the scope of the multi-core processor. *See* Dkt. 26 at 11-12. Because the, now abandoned,

---

[1] Further, it is clear that NVIDIA is attempting to subvert the Court's page limits by submitting extensive expert declarations. First, submitting an additional 20 pages of claim construction arguments under the guise of an expert declaration. *See* Dkt. 25-1 at 9-29. And now submitting two and a half additional pages of reasoning on this point while already at its 10 page limit in its brief. *See Dkt.* 28-1 at 4-7.

opening figures are the only figures, NVIDIA itself relies upon, to meet its clear and convincing burden, NVIDIA cannot meet its burden. Claim 14 should be given its plain and ordinary meaning.

Should the Court consider the arguments made only in Dr. Pedram's new declaration, that the Intel figures support NVIDIA's indefiniteness conclusion, the figures show the opposite. Dr. Pedram's argument asks the wrong questions. Tellingly, Dr. Pedram asks if there is "any 'common region' that is 'substantially central' to any two or all three sets of cores. Dkt. 28-1 at ¶10. That ignores the rest of the claim language, i.e. that the "common region" is "substantially central" to the first and second set of processor cores, not a collection of three sets. Likewise, Dr. Pedram fails to consider that a "common region" is a subdivision of the multi-core processor containing the first and second sets of cores. In Intel, such a region appears to exist around Core2 and Core0 where there is a shared set of memory, but not with Core1:



**Figure 2: Six-core processor die photo**

If the CBC is considered the claimed control blocks[2] it would clearly be outside the "common region" of Core2 and Core0 and thus not meet claim 14. Moreover, this common region is unarguably substantially central to sets of cores, Core2, Core0, as any such common region would be. NVIDIA's new extrinsic evidence does not meet NVIDIA's burden, rather it shows how a POSITA would understand claim 14 is not indefinite.

NVIDIA last argues that "common region" is indefinite but without ever addressing how the specification uses "region." Instead, NVIDIA points to the specification's discussion of where control blocks may be located. Dkt. 28 at 9-10. NVIDIA claims because the "common area," not common region, is not discussed as including the sets of processors, the term is indefinite. But an omission as to another term is irrelevant as to another term when the discussion surrounding the claimed term is clear.

Conceding this argument is nonsensical, NVIDIA contends there are still "intractable questions" when the proper construction is considered. NVIDIA asks "how close to one another the control blocks and core sets would need to be to qualify as being in a 'common region'" and if there is a degree of intermingling required. But fundamentally, questions are not evidence and are not even supported by NVIDIA's expert as relevant. The specification explains a region may correspond to a row of the exemplary multi-core processor. '339 Patent at 2:20-23. That is a cohesive subdivision of the multi-core processor including a set of processor cores. There is no serious question about what makes a region or common region that an expert will be unable to address to the jury.

---

[2] It should not be as it is a Caching Bridge Controller not apparently a control block that sends control signals to the sets of processor cores.

To the extent the Court feels this term must be construed, it should be construed as: The multi-core processor of claim 1, wherein the first set of processor cores and the second set of processor cores are configured to receive one or more control signals from one or more control blocks located in a common region of the first set of processor cores and the second set of processor cores.

## III.    CONCLUSION

For the reasons provided above, all disputed terms should be given their plain and ordinary meaning. Defendant has failed to meet its burden to show any term is indefinite.

Dated: December 15, 2025                    Respectfully submitted,

*/s/ Reza Mirzaie*

RUSS AUGUST & KABAT
Reza Mirzaie, CA Bar No. 246953
Email: rmirzaie@raklaw.com
Marc A. Fenster, CA Bar No. 181067
Email: mfenster@raklaw.com
Neil A. Rubin, CA Bar No. 250761
Email: nrubin@raklaw.com
Christian W. Conkle, CA Bar No. 306374
Email: cconkle@raklaw.com
Jonathan Ma, CA Bar No. 312773
Email: jma@raklaw.com
Joshua Scheufler, TX Bar No. 24123406
Email: jscheufler@raklaw.com
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

Qi (Peter) Tong, TX Bar No. 24119042
Email: ptong@raklaw.com
8080 N. Central Expy., Suite 1503
Dallas, TX 75206
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

*Attorneys for Plaintiff Redstone Logics LLC*

## **CERTIFICATE OF SERVICE**

I certify that on December 15, 2025, a true and correct copy of the foregoing document was electronically filed with the Court and served on all parties of record via the Court's CM/ECF system.

 */s/ Reza Mirzaie*
Reza Mirzaie
