**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION**

| | | |
|---|---|---|
| **REDSTONE LOGICS LLC,**<br>    *Plaintiff,* | § § § § | |
| **-v-** | § § § | **7:25-CV-00184-ADA** |
| **NVIDIA CORPORATION,**<br>    *Defendant.* | § § § | |

## CLAIM CONSTRUCTION ORDER AND MEMORANDUM IN SUPPORT THEREOF

Before the Court are the Parties' claim construction briefs: Defendant NVIDIA Corporation's Opening and Reply briefs (ECF Nos. 25 and 28, respectively) and Plaintiff Redstone Logic LLC's Response and Sur-Reply briefs (ECF Nos. 26 and 29, respectively). The Court provided preliminary constructions for the disputed terms one day before the hearing. The Court held the *Markman* hearing on March 19, 2026. ECF No. 36. During that hearing, the Court informed the Parties of the final constructions for the disputed terms. *Id.* This Order does not alter any of those constructions.

## I. DESCRIPTION OF THE ASSERTED PATENT AND PRIOR LITIGATION

### A. Description of U.S. Patent No. 8,549,339

Plaintiff asserts U.S. Patent No. 8,549,339, which is entitled "Processor core communication in multi-core processor." The specification describes that the cores in prior art multi-core processors generally share the same supply voltage and clock signal. '339 Patent at 1:7–10. But to use dynamic voltage and frequency scaling—which is a technique that varies the

power supply voltage and clock frequency to reduce power consumption[1]—multiple supply voltages and multiple clock signals need to be provided to allow different cores to operate at different voltages and/or frequencies. *See id.*

The specification describes that the multi-core processor "may be further divided into regions." *Id.* at 2:20–21. Each region may have its own independent power profile that uses its own supply voltage and its own independent clock domain that has a phase lock loop ("PLL") to output its own clock signal. *Id.* at 2:26–31.

Claims 1 and 21 require two sets of processor cores, each having their own supply voltage and their own clock signal.

1. A multi-core processor, comprising:
   a first set of processor cores of the multi-core processor, wherein each processor core from the first set of processor cores is configured to dynamically receive a first supply voltage and a first output clock signal of a first phase lock loop (PLL) having a first clock signal as input;
   a second set of processor cores of the multi-core processor, wherein each processor core from the second set of processor cores is configured to dynamically receive a second supply voltage and a second output clock signal of a second PLL having a second clock signal as input, wherein the first supply voltage is independent from the second supply voltage, and the first clock signal is independent from the second clock signal; and
   an interface block coupled to the first set of processor cores and also coupled to the second set of processor cores, wherein the interface block is configured to facilitate communication between the first set of processor cores and the second set of processor cores.

21. A multi-core processor, comprising:
   a first set of processor cores of the multi-core processor, wherein each processor core from the first set of processor cores is configured to dynamically receive a first supply voltage from a power control block and a first output clock signal from a first phase lock loop (PLL) having a first clock signal as input in a clock control block;
   a second set of processor cores of the multi-core processor, wherein each processor core from the second set of processor cores is configured to

---

[1] The formula for switching power is $P = f * C_L * V_{DD}^2$, where f is the frequency of the clock signal, $C_L$ is the capacitance of the load (output), and $V_{DD}$ is the voltage of the supply voltage. As such, reducing the frequency linearly reduces the switching power while reducing the voltage of the supply voltage exponentially reduces the switching power.

dynamically receive a second supply voltage from the power control block and a second output clock signal from a second PLL having a second clock signal as input in the clock control block, wherein the first supply voltage is independent from the second supply voltage, and the first clock signal is independent from the second clock signal; and

an interface block coupled to the first set of processor cores and also coupled to the second set of processor cores, wherein the interface block is configured to facilitate communication between the first set of processor cores and the second set of processor cores.

## B. Claim Construction in Prior Cases

Judge Gilliland and this Court previously construed disputed terms in the Asserted Patent in three prior cases. The following table lists the defendant in each case, the judge who construed the disputed terms, and the final construction for "the first clock signal is independent from the second clock signal" ("independent" in the table) and "located in a common region that is substantially central to the first set of processor cores and the second set of processor cores" ("substantially central" in the table).

| Case Name | Case | Judge | "independent" | "substantially central" |
|---|---|---|---|---|
| *NXP* | 7-24-cv-00028 | Gilliland | Plain-and-ordinary meaning, wherein the plain and ordinary meaning does not require that the first and second clock signals depend from different reference oscillator clocks. | Indefinite. |
| *MediaTek* | 7-24-cv-00029 | Gilliland | N/A | Indefinite. |
| *Qualcomm* | 7-24-cv-00231 | Albright | Plain-and-ordinary meaning, wherein the plain and ordinary meaning does not require that the first and second clock signals depend from different reference oscillator clocks. | Indefinite. |

The remainder of this order refers to the *Qualcomm* Claim Construction Order. *Redstone Logics LLC v. Qualcomm Inc.*, No. 7-24-cv-00231, ECF No. 43 (W.D. Tex. Oct. 15, 2025).

3

## II.    LEGAL STANDARD

### A.  General principles

The general rule is that claim terms are generally given their plain-and-ordinary meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014), *vacated on other grounds*, 575 U.S. 959, 959 (2015) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.") (internal quotation omitted).  The plain-and-ordinary meaning of a term is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention."  *Phillips*, 415 F.3d at 1313.

The "only two exceptions to [the] general rule" that claim terms are construed according to their plain-and-ordinary meaning are when the patentee (1) acts as his/her own lexicographer or (2) disavows the full scope of the claim term either in the specification or during prosecution. *Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).  The Federal Circuit has counseled that "[t]he standards for finding lexicography and disavowal are exacting." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014).  To act as his/her own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term" and "'clearly express an intent' to [define] the term." *Thorner,* 669 F.3d at 1365.  "For a statement during prosecution to qualify as a disavowal of claim scope, it must be 'so clear as to show reasonable clarity and deliberateness,' and 'so unmistakable as to be unambiguous evidence of disclaimer.'" *Genuine Enabling Tech. LLC v. Nintendo Co.*, 29 F.4th 1365, 1374 (Fed. Cir. 2022) (quoting *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325 (Fed. Cir. 2003)).

"Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Phillips*, 415 F.3d at 1317. "[D]istinguishing the claimed

invention over the prior art, an applicant is indicating what a claim does not cover." *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1379 (Fed. Cir. 1998). The doctrine of prosecution disclaimer precludes a patentee from recapturing a specific meaning that was previously disclaimed during prosecution. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). "[F]or prosecution disclaimer to attach, our precedent requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable." *Id.* at 1325–26. Accordingly, when "an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

A construction of "plain and ordinary meaning" may be inadequate when a term has more than one "ordinary" meaning or when reliance on a term's "ordinary" meaning does not resolve the parties' dispute. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co*., 521 F.3d 1351, 1361 (Fed. Cir. 2008). In that case, the Court must describe what the plain-and-ordinary meaning is. *Id.*

"Although the specification may aid the court in interpreting the meaning of disputed claim language . . ., particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988). "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

Although extrinsic evidence can be useful, it is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317

(quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)).  Technical dictionaries may be helpful, but they may also provide definitions that are too broad or not indicative of how the term is used in the patent.  *Id.* at 1318.  Expert testimony may also be helpful, but an expert's conclusory or unsupported assertions as to the meaning of a term are not.  *Id.*

### B.  Indefiniteness

"[I]ndefiniteness is a question of law and in effect part of claim construction."  *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012).  Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112, ¶ 2. A claim, when viewed in light of the intrinsic evidence, must "inform those skilled in the art about the scope of the invention with reasonable certainty."  *Nautilus Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014).  If it does not, the claim fails § 112, ¶ 2 and is therefore invalid as indefinite.  *Id.* at 901.  Whether a claim is indefinite is determined from the perspective of one of ordinary skill in the art as of the time the application was filed.  *Id.* at 911.

### III.    LEGAL ANALYSIS

#### A.  Term #1: "the first clock signal is independent from the second clock signal"

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| #1: "the first clock signal is independent from the second clock signal"<br><br>U.S. Patent No. 8,549,339, Claims 1, 21<br><br>Proposed by Defendant | Plain and ordinary meaning | "the first and second clock signals depend from different reference oscillator clocks" |

**The Parties' Positions:**

This Court previously construed this term as plain-and-ordinary meaning, wherein the plain and ordinary meaning does not require that the first and second clock signals depend from different reference oscillator clocks. *Qualcomm* Claim Construction Order at 19, 35.

Defendant contends that its proposed construction "tracks a POSITA's understanding of the plain and ordinary meaning of the limitation based on the intrinsic evidence," namely that Applicant disclaimed a broader interpretation of the limitation during prosecution. Opening at 5.

Defendant contends that the specification that a set of cores "may be associated with an . . *independent clock domain* defined by a clock signal." *Id.* (quoting '339 Patent at 2:26–31 (emphasis in Defendant's brief)). Defendant contends that Figure 3 depicts three separate clock signals (clock signals 1, 2, and 3) are input to phase lock loops 1, 2, and 3, the outputs of which are input to cores 152, 154, and 156, respectively. *Id.* at 6 (annotations in Defendant's brief).



Defendant contends that the prosecution history confirms that "independent" clock signals require different oscillators. *Id.* Defendant contends that Examiner rejected pending Claims 1 and 21 based on the Jacobowitz prior art reference (U.S. Patent Pub. No. 2009/0106576) (hereinafter "Jacobowitz") because it disclosed a multi-core processor that "distribute[s] the [single] system reference oscillator clock frequency ($v_R$) [orange] to each local oscillator 108 [also orange]," as shown in annotated Figure 6 from Jacobowitz below. *Id.* (citing Jacobowitz at ¶ [0038]) (alterations in Defendant's brief).



FIG. 6

*Id.* at 7 (depicting Jacobowitz at Figure 6) (annotations in Defendant's brief). Defendant contends

that Applicant distinguished Jacobowitz by arguing that clock signals 1, 2, and 3 in Figure 3 in the

'339 Patent were "different/independent" clock signals input to the PLLs while Figure 6 in

Jacobowitz disclosed a "single reference clock." *Id.* (quoting Opening, Ex. 2 ('339 Patent File

History) at 95). Defendant contends that "[Examiner] agreed with the applicant's assertion but

determined that the as-filed claims were broad enough to encompass Jacobowitz's single reference

oscillator approach." *Id.* Defendant contends that, in response, Applicant amended the pending

claims to include "the first clock signal is independent from the second clock signal" and argued

that Jacobowitz did not teach this amendment. *Id.* (citing Opening, Ex. 2 ('339 Patent File History)

at 83, 86–87, 90). Based on that, Defendant contends that Applicant's statement "makes clear that

different reference oscillators are required to generate 'independent' clock signals." *Id.*

Defendant contends that Examiner also rejected the pending claims based on the Kim (U.S.

Patent Pub. No. 2009/0138737) (hereinafter "Kim") prior art reference. *Id.* at 8 (citing Opening,

9

Ex. 2 ('339 Patent File History) at 73–76).   Defendant contends that Kim discloses "a single

reference oscillator that provides a signal that is divided and distributed to multiple PLLs."   *Id.*

(citing Opening, Ex. 4 (Kim) at ¶ 25).



*Id.* at 7 (depicting Kim at Figure 2 (annotations in Defendant's brief).

Defendant contends that Applicant argued that Kim does not disclose that "the first clock

signal is independent from the second clock signal" because "*[i]nstead*, *Kim* discloses . . . a ***single***

***clock source*** (i.e., 170 in FIG. 1 or 270 in FIG. 2)."   *Id.* (quoting Opening, Ex. 2 ('339 Patent File

History) at 90–91 (emphases in Defendant's brief)).   Defendant contends that "[A]pplicant's use

of the word 'instead' establishes that clock signals that originate from a single reference oscillator

are outside the scope of the limitation."   *Id.*   Based on that, Defendant contends that if the single

reference oscillator in Kim does not meet the "independent" limitation because it discloses a single

reference oscillator, then "different reference oscillator clocks," as described in Defendant's proposed construction, are required.  *Id.*

Defendant contends that Applicant's statement meet the requirements for prosecution disclaimer, contrary to the Court's conclusion in the *Qualcomm* case.  *Id.* at 9.  More specifically, Defendant contends that while the Court noted that Kim allegedly fails to disclose providing first and second clocks signals to separate sets of cores, Applicant still separately distinguished Kim as lacking "independent" clock signal, which still meets the disclaimer standard.  *Id.* (citing *Qualcomm* Claim Construction Order at 15–17, *Saffran v. Johnson & Johnson*, 712 F.3d 549, 559 (Fed. Cir. 2013)).  Defendant contends that "the Court suggested that the applicant may have understood Kim to disclose a single clock signal and, for that reason, lacked 'independent' clock signals." *Id.* at 10 (citing *Qualcomm* Claim Construction Order at 15–17).  But Defendant contends that "[A]pplicant expressly provided Kim's 'single source clock' as the only reason why the reference's clock signals are not independent and therefore do not read on the claims as amended." *Id.*

Defendant contends that the "Court also states that the applicant did not distinguish Jacobowitz for having a single clock source, which indicates there was no disclaimer." *Id.* (citing *Qualcomm* Claim Construction Order at 15–17).  But Defendant contends that, as described above, "[A]pplicant distinguished Jacobowitz's single clock source from the claimed 'independent' clock signals." *Id.*

Finally, Defendant contends that "dictionary definitions support that a POSITA would have understood 'independent' clock signals as separate and not depending from the same source." *Id.* (citing Opening, Ex. 5, 6).

In its response, Plaintiff contends that this term simply means that a first signal that does not depend on a particular second signal. Response at 1. Plaintiff contends that Defendant's proposed construction requires that that the signals depend from different reference oscillator clocks, which implies a third and a fourth signal (the different reference oscillator clocks). *Id.* at 1–2. Plaintiff contends that Defendant does not provide any support from the relevant art that the meaning of "the first clock signal is independent from the second clock signal" implicates a third signal. *Id.* at 2. Therefore, Plaintiff contends that should reject Defendant's proposed construction and adopt Plaintiff's proposed construction or the Court's construction from the *Qualcomm* case. *Id.*

With respect to the prosecution history, Plaintiff contends that "Applicant argued that Jacobowitz did not include a first and second clock signal because it offered only a single clock signal provided to both local oscillators/PLLs disclosed by Jacobowitz, not two 'different/independent clock signals' as shown in Figure 3 of the patent." *Id.* (citing Opening, Ex. 2 ('339 Patent File History) at 95). Plaintiff contends that Examiner agreed that Jacobowitz and Figure 3 were different, but found that once Jacobowitz's single oscillator was processed by two different local oscillators/PLLs, it could be "different/independent." *Id.* (citing Opening, Ex. 2 ('339 Patent File History) at 95). Plaintiff contends that Applicant amended the claims as follows:

| Original Claim Language | Amended Language |
|---|---|
| 1: A multi-core processor, comprising:<br>A first set of processor cores of the multi-core processor, wherein each dynamically receive a first supply voltage and a first clock signal;<br>A second set of processor cores of the multi-core processor, wherein each processor core form the second set of processor cores is configured to dynamically receive a second supply voltage and a second clock signal; and<br>An interface block coupled to the first set of processor cores and also coupled to the second set of processor cores, wherein the interface block is configured to facilitate communication between the first set of processor cores and the second set of processor cores. | 1: A multi-core processor, comprising:<br>A first set of processor cores of the multi-core processor, wherein each processor core from the first set of processor cores is configured to dynamically receive a first supply voltage and a first output clock signal of a first phase lock loop (PLL) having a first clock signal as input;<br>A second set of processor cores of the multi-core processor, wherein each processor core from the second set of processor cores is configured to dynamically receive a second supply voltage and a second output clock signal of a second PLL having a second clock signal as input, wherein the first supply voltage is independent from the second supply voltage, and the first clock signal is independent from the second clock signal; and<br>An interface block coupled to the first set of processor cores and also coupled to the second set of processor cores, wherein the interface block is configured to facilitate communication between the first set of processor cores and the second set of processor cores. |

*Id.* at 3 (citing Opening, Ex. 2 ('339 Patent File History) at 83 (highlighting in Plaintiff's brief)).

Plaintiff contends that Applicant argued that Jacobowitz fails to teach (1) "a first output clock signal of a first PLL having a first clock signal as input and a second output clock signal of a second PLL having a second clock signal as input" and (2) "the first clock signal is independent form the second clock signal," because it only discloses distributing a single signal $v_R$ to local oscillators. *Id.* at 3–4 (citing Opening, Ex. 2 ('339 Patent File History) at 89–90). Plaintiff contends that "[t]he first and second clock signals cannot be the same signal as one signal is not two signals and a single signal cannot be independent of itself." *Id.* at 4. Plaintiff contends that "[b]ecause the claims now distinguished between the input and output signals of the PLLs it is irrelevant that Jacobowitz's output clock signals are independent of each other as was previously critical." *Id.*

Plaintiff contends that Applicant also distinguished Jacobowitz based on the fact that Jacobowitz does not disclose that the supply voltage is provided to sets of processors cores. *Id.* at 4, n.1. Plaintiff contends that this again distinguishes Kim, like Jacobowitz, based on the fact that it does not disclose that the supply voltage is provided to sets of processors cores. *Id.* at 4.

Plaintiff further contends that Applicant distinguished Kim for failing to disclose "the first clock signal is independent from the second clock signal." *Id.* Rather, Plaintiff contends that Kim discloses a "single clock source … [that] is then processed … and ***provided to each of the cores***." *Id.* (quoting Opening, Ex. 2 ('339 Patent File History) at 90–91 (alterations and emphasis in Plaintiff's brief)). Plaintiff contends that "[b]ecause there are no sets of processor cores, there are no first and second supply voltages that they are configured to dynamically receive." *Id.* Plaintiff contends that the same argument likewise applies to the first and second clock signals. *Id.* at 5.

Plaintiff contends that Defendant "misconstrues and misquotes the intrinsic evidence." *Id.* Plaintiff first contends that Defendant's argument that Figure 3 in the specification is "consistent with having multiple reference oscillators." *Id.* (quoting Opening at 6; citing *Thorner*, 669 F.3d at 1365). Plaintiff next contends that Defendant's argument that Applicant's statement that "clock signals 1 through 3 were different/independent clock signals input to the PLLs while Jacobowitz disclosed a single reference clock" thus requires "different reference oscillators" is a "creation" of Defendant. *Id.* Rather, Plaintiff contends that Applicant's statement contrasts (1) the claimed invention's use of "multiple different/independent clock signals ***input to multiple PLLs*** before reaching cores" (2) Jacobowitz's disclosure of a single reference clock. *Id.* (emphasis in Plaintiff's brief). Plaintiff contends that Defendant's interpretation of Applicant's statement ignores the key distinction, which is distinguishing the input and output of PLLs. *Id.*

14

With respect to Kim, Plaintiff contends that Defendant "treats the 'instead' as though it directly contrasts only the independent limitation and 'a single clock source.'" *Id.* at 6. But Plaintiff contends that Applicant contrasted (1) a first and second set of cores, (2) that the PLLs receive first and second clock signals as input and output first and second output clock signals, and (3) the "independent" limitation against "Kim's apparatus having a single clock source and the clock signal is processed and provide to each of the cores." *Id.* Plaintiff contends that there is no statement that Kim's single clock source is the only reason why the reference clock signals are not independent, and it would be incorrect to pick the difference that Defendant prefers. *Id.*

Plaintiff contends that Applicant "did not suggest that Kim's clock signals 262, 264, 266, and 268 are not independent because they all originate from the same clock source" for three reasons. *Id.* at 7. Plaintiff first contends that there is no evidence that "[A]pplicant even considered these signals to be a first or second clock signal as input to a first and second PLL as required by the claim." *Id.* Plaintiff next contends that "there is no indication that the Applicant understood that these signals could even be different or changed independently as would be required by the plain meaning of 'independent.'" *Id.* Plaintiff contends that if these signals are the same, then they cannot meet the "independent" requirement. *Id.*

Plaintiff finally contends that Defendant's dictionary definitions should not be considered because the limitation is clear on its face and because these definitions do not suggest that two signals being independent has anything to do with a third signal. *Id.*

In its reply, Defendant contends that its proposed construction is correct because Applicant repeatedly argued that signals from a signal reference oscillator are not "independent." Reply at 1. Defendant contends that "[E]xaminer explained[] [that] Jacobowitz disclosed a structure parallel in its composition to Figure 3 of the '339 patent: a multicore processor with two sets of

15

four cores with each set having its own local oscillator." *Id.* at 2.  Defendant contends that each of the local oscillators in Jacobowitz provides each of the cores in its set with a different clock signal ($v_0$ and $v_1$), both of which are derived from a single reference oscillator ($v_R$).  *Id.*

Defendant contends that "[A]pplicant amended the claims and distinguished Jacobowitz based on the amendments." *Id.*  Defendant contends that Applicant argued that clock signals 1, 2, and 3 are "***different/independent clock signals input to the PLLs while Jacobowitz disclosed using a single reference clock***." *Id.* (quoting Opening, Ex. 2 ('339 Patent File History) at 95 (emphasis in Defendant's brief)).  Defendant contends that Applicant then amended the claims to, *inter alia*, add the "independent" limitation. *Id.* at 2–3 (citing Opening, Ex. 2 ('339 Patent File History) at 83).  Defendant contends that "[A]pplicant stated that the single reference oscillator approach of Jacobowitz failed to show (i) PLLs arranged as claimed (Jacobowitz discloses local oscillators) and (ii) '[i]n addition, the first clock signal is independent from the second clock signal, as required in the amended independent claims 1 and 21.'" *Id.* at 3 (quoting Opening, Ex. 2 ('339 Patent File History) at 90).

Defendant contends that Plaintiff's argument that the disclaimer of clock signals from a single reference oscillator is "immaterial" in light of the fact Applicant distinguished Jacobowitz based on the arrangement of the PLLs (*e.g.*, "a first output clock signal of a first phase lock loop (PLL) having a first clock signal as input") is wrong for two reasons. *Id.*  Defendant first contends that "Federal Circuit law is clear that the public is entitled to rely on all grounds raised to distinguish claimed subject matter over the prior art." *Id.* (citing *Amgen Inc. v. Coherus BioSciences Inc.*, 931 F.3d 1154, 1159–60 (Fed. Cir. 2019)).  Defendant next contends that Applicant could not have distinguished Jacobowitz due to "its use of the term 'local oscillators' (i.e., digitally controlled clock generators) because a PLL is an obvious implementation of a

16

digitally controlled clock generator." *Id.* at 4 (citing ECF No. 28-1 (Pedram Reply Declaration) at ¶ 6). Defendant contends that Kim's description of using voltage controlled oscillators ("VCOs") to implement a PLL indicate that it was well known in the art at the time to use VCOs to implement PLLs. *Id.*

Defendant contends that Applicant's response in connection to the Kim prior art reference "reinforce[s] the conclusion that the claims do not cover single source clocking arrangements for multi-core processors." *Id.* at 5. More specifically, Defendant contends that Applicant "further distinguished Kim as lacking independent clock signals" by arguing that "[i]nstead, *Kim* discloses the apparatus comprising a multi-core processor (i.e., 100 in FIG. 1 or 200 in FIG. 2) ***having a single clock source*** (i.e., 170 in FIG. 1 or 270 in FIG. 2)." *Id.* (quoting Opening, Ex. 2 ('339 Patent File History) at 90–91 (emphasis in Defendant's brief)). In other words, Defendant contends that "[A]pplicant's answer for why Kim had neither multiple signals nor independent clock signals was the same: Kim used a single clock source." *Id.*

Defendant contends that Plaintiff's argument that Applicant distinguished Kim on other grounds other than the "independent" limitation is irrelevant because "[w]hen an applicant provides several reasons for distinguishing prior art during prosecution, each reason creates an independent basis for disclaimer." *Id.* at 6–7 (citing cases).

Defendant contends that the Court's earlier *Qualcomm* Claim Construction Order "posits that the applicant might have believed that Kim's 'PLL1 216, PLL2 226, PLL 236, and PLL 246 could not be independently varied and distinguished the claimed invention accordingly.'" *Id.* (quoting *Qualcomm* Claim Construction Order at 19). But Defendant contends that Applicant did not say that and that "Kim indicates that its PLLs could be used to dynamically vary the frequency on a core-by-core basis." *Id.* (citing Kim at ¶ 25). Defendant contends that "[c]ourts 'hold

17

patentees to the actual arguments made' during prosecution, 'not the arguments that could have been made.'" *Id.* (quoting *Tech. Props. Ltd. LLC v. Huawei Techs. Co.*, 849 F.3d 1349, 1359 (Fed. Cir. 2017)).

In its sur-reply, with respect to Jacobowitz, Plaintiff contends that there is no lexicography or disclaimer. Sur-Reply at 1. Plaintiff contends that Applicant argued that Jacobowitz discloses a chip that "receives a system reference oscillator clock frequency []and distributes $v_R$ to local oscillators[]." *Id.* (quoting Opening, Ex. 2 ('339 Patent File History) at 89 (alterations in Plaintiff's brief)). Based on that, Plaintiff contends that Jacobowitz does not disclose the claimed "first output clock signal of a first PLL having a first clock signal as input and a second output clock signal of a second PLL having a second clock signal as input, respectively[.]" *Id.* (citing Opening, Ex. 2 ('339 Patent File History) at 89–90). Plaintiff contends that Applicant argues that Jacobowitz also fails to teach the "independent" limitation because Jacobowitz fails to disclose the first and second clock signals. *Id.* Plaintiff contends that, in other words, "[i]f the signals are not present, they also cannot be independent." *Id.*

Plaintiff contends that Defendant's argument that disclaimer applies to all arguments that Applicant made does not apply here. *Id.* at 2. More specifically, Plaintiff contends that Defendant does not point to a concrete quotation from the prosecution history, but rather "must instead recreate the argument it would have the applicant make." *Id.* Plaintiff contends that there was "a clearer alternative reasoning for applicant's statements[,]" namely, that "because there are no first and second clock signals, they cannot be independent." *Id.*

Plaintiff contends that Applicant also did not make a disclaimer while distinguishing Kim. *Id.* Plaintiff contends that "[A]pplicant explained Kim did not disclose a first and second, i.e.

'multiple,' clock signals," so there does not exist a first and second clock signal to be independent from each other.  *Id.*

Plaintiff contends that Defendant "insists that a single reference to "a single clock source" must amount to a limitation, it does not."  *Id.*  Rather, Plaintiff contends that Applicant "did not disclaim every 'single source clocking arrangements for multi-core processors,' instead it made targeted arguments as to Kim."  *Id.*  Plaintiff contends that Defendant ignores the rest of Applicant's statement that recited that Kim's "apparatus comprising a multicore processor" "having a single clock source" "[t]he clock signal from this single clock source is then processed" "and provided to each of the cores" does not meet the limitation.  *Id.* (quoting Opening, Ex. 2 ('339 Patent File History) at 90–91) (alteration in Plaintiff's brief).  Plaintiff contends that basing a construction on Applicant's statement would mean that the "independent" limitation excludes "a single clock source wherein the clock signals is then processed and provided to each of the cores," rather than only excluding a single clock source.  *Id.* at 3.

Plaintiff contends that there was not a "clear and unmistakable disavowal of just a single clock source."  *Id.*  More specifically, Plaintiff contends that in the relevant prosecution statement ("Instead, *Kim* discloses the apparatus comprising a multi-core processor[] having a single clock source."), Applicant "distinguished ***Kim's*** multi-core processor, not just any single clock source multi-core processor."  *Id.* (quoting Opening, Ex. 2 ('339 Patent File History) at 90 (alteration and emphasis in Plaintiff's brief)).

With respect to Defendant's argument about the Court's *Qualcomm* order, Plaintiff contends that "the claims never call for individual cores to be provided clock signals, rather all clock signals are provided to ***sets*** of processor cores."  *Id.* at 4 (emphasis in Plaintiff's brief).  Plaintiff contends that Defendant's argument "only further underscores that the basis to distinguish

19

Kim from the claims was its failure to teach sets of cores and even the claimed clock signals, not the singular clock source." *Id.*

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with Plaintiff that this term should be construed according to its plain-and-ordinary meaning. The dispute between the parties is whether Applicant made a disclaimer during prosecution while distinguishing the Jacobowitz and Kim prior art references. *See, e.g.*, Opening at 6–10, Response at 2–7. For the reasons described below, the Court concludes Applicant did not make a disclaimer during prosecution; as such, the Court concludes that plain-and-ordinary meaning is appropriate.

*First*, with respect to both Jacobowitz and Kim, Defendant effectively argues that because Jacobowitz and Kim only disclose a single reference oscillator, Applicant's argument that neither prior art reference disclosed that "the first clock signal is independent from the second clock signal" meant that Applicant disclaimed a single reference oscillator system. *See, e.g.*, Opening at 7 ("The applicant's statement to the examiner makes clear that different reference oscillators are required to generate 'independent' clock signals. Thus… the applicant distinguished Jacobowitz for having a single reference oscillator."); Reply at 8 ("The applicant argued that Kim 'fails to disclose or teach . . . a first clock signal is independent from the second clock signal' because '[i]nstead, Kim discloses . . . a single clock source (i.e., 170 in FIG. 1 or 270 in FIG. 2).'"). But a single reference oscillator system is not mutually exclusive with "independent" clock signals.

The first problem with Defendant's argument is that ignores the claim language. The claims define the first and second clock signal as being input into the first and second PLLs, respectively. *See, e.g.*, '339 Patent, Claim 1, Limitation [a] ("a first output clock signal of a first

20

phase lock loop (PLL) *having a first clock signal as input*"), Limitation [b] ("a second output clock signal of a second PLL *having a second clock signal as input*") (emphases added). Defendant's argument incorrectly focuses what the first and second clock signals are output from, *i.e.*, a single reference oscillator, rather than focusing on what the first and second clock signals are input into, *i.e.*, the PLLs, as required by the claims.

In addition, a first and second clock signal that are input into a first and second PLL, respectively, may originate from the same reference oscillator, but are "independent" from each other because the value of one does not depend on the other. While both depend on the same reference oscillator, that does not mean that one is dependent on the other; rather, it only means that they are both dependent on the reference oscillator.

*Second*, the Court agrees with Plaintiff that Applicant did not disclaim single reference oscillator systems while distinguishing Jacobowitz. Applicant first characterized Jacobowitz as disclosing "that the microprocessor chip (e.g., 600) receives a system reference oscillator clock frequency ($v_R$) and distributes $v_R$ to local oscillators 108" before arguing that Jacobowitz does not disclose that "the first clock signal is independent from the second clock signal, as required in the amended independent claims 1 and 21." Opening, Ex. 2 ('339 Patent File History) at 89–90 (citing Jacobowitz at ¶¶ [0037]–[0038], Figure 6). Based on these statements, the Court concludes that Applicant did not disclaim a single reference oscillator system, but distinguished the pending claims from Jacobowitz in two ways. The first way is because the alleged clock signals are not input into a PLL, but are rather input into local oscillators 108. Jacobowitz at Figure 6. While Defendant attempts to argue that "PLLs were routinely implemented using digitally controlled clock generators, such as voltage controlled oscillators," PLLs and voltage controlled oscillators are not synonymous, nor does Defendant even attempt to argue so. Rather, Defendant only argues

21

that voltage controlled oscillators are used to *implement* PLLs.  But just because a voltage controlled oscillators are used to implement a PLL does not mean that the former is coextensive with the latter.  A PLL uses a voltage controller oscillator *and* other components, *e.g.*, a feedback loop, to generate an output with a stable frequency and phase.  Therefore, because Jacobowitz does not use PLLs, there cannot be a first and second clock signal *that are input into a first and second PLL*, respectively.

The second way that pending Claims 1 and 21 are different than Jacobowitz is that, even if Jacobowitz disclosed using PLLs instead of using voltage controlled oscillators, Jacobowitz does not disclose both a first and second clock signal.  More specifically, Figure 6 depicts that the same clock signal $v_R$ is input to local oscillators 108 (which for the purposes of this analysis are assumed to be PLLs).  Jacobowitz at Figure 6.



FIG. 6

In other words, rather than disclosing both a first and a second clock signal, a reasonable interpretation of Applicant's argument is that Applicant distinguished pending Claims 1 and 21 from Jacobowitz by arguing that $v_R$ is only one clock signal and thus can only be the first clock signal or the second clock signal, but not both.  Given that there are multiple reasonable interpretations to Applicant's statement, Applicant's statements do not meet the requirements for disclaimer.  *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013) (when "an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable").

Furthermore, even if $v_R$ could be both a first clock signal and a second clock signal, because $v_R$ cannot be independent from itself, Jacobowitz does not disclose that "the first clock signal is independent from the second clock signal," as Applicant argued.  Opening, Ex. 2 ('339 Patent File History) at 89–90).

Finally, Applicant's statement that "different/independent clock signals input to the PLLs while Jacobowitz disclosed using a single reference clock" is also not a disclaimer.  Opening, Ex. 2 ('339 Patent File History) at 95).  More specifically, as described above, a clock signal is not dependent on another clock merely because they are outputted from the same reference clock.

For at least these reasons, while distinguishing Jacobowitz, Applicant did not make a "clear and unmistakable" disclaimer that disclaimed single reference oscillator systems.

***Third***, the Court agrees with Plaintiff that Applicant also did not disclaim single reference oscillator systems while distinguishing Kim.  With respect to Kim, Applicant described that:

> [1] In addition, *Kim* also fails to disclose or teach a first set of processor cores and second set of processor cores configured to dynamically receive a first output clock signal of a first PLL having a first clock signal as input and a second output clock signal of a second PLL having a second clock signal, respectively.  [2] In addition, the first clock signal is independent from the second clock signal.  [3] Instead, *Kim* discloses the apparatus comprising a multi-core processor (i.e., 100 in FIG. 1 or

23

> 200 in FIG. 2) having a single clock source (i.e., 170 in FIG. 1 or 270 in FIG. 2). [4] The clock signal from this single clock source is then processed (i.e., divided or multiplied) and provided to each of the cores.

Opening, Ex. 2 ('339 Patent File History) at 90–91 (annotations added). In the first sentence of the above passage, Applicant argued that Kim does not disclose *sets* of cores, but rather single cores. *See also* Opening, Ex. 2 ('339 Patent File History) at 90 ("Instead, *Kim* discloses having each core, not a set of processor cores, received a $V_{DD}$"). Applicant distinguished Kim based on this requirement. *Id.* at 91 ("The clock signal from this single clock source is then processed (i.e., divided or multiplied) and provided to each of the cores."); 91 ("As discussed above, neither *Jacobowitz* nor *Kim* discloses having sets of processor cores configured to receive multiple and independent clock signals."). Because the clock signals in Kim are provided to individual cores—and not sets of cores—the clock signals in Kim are not the first and second clock signals of Claims 1 and 21, which must be provided to sets of cores. Concomitantly, because the clock signals in Kim are not the first and second clock signals, they likewise cannot meet the requirement that "the first clock signal is independent from the second clock signal." Because Applicant's prosecution statements were directed at differentiating Kim based on its failure to disclose sets of cores and, concomitantly, the first and second clock signals that are received by those sets of cores, the Court concludes that there was no disclaimer regarding the first and second clock signals. *3M Innovative Props.*, 725 F.3d at 1326 (when "an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable").

In the third sentence, Applicant generally describes the invention of Kim, namely, that it "compris[es] a multi-core processor … having a single clock source (i.e., 170 in FIG. 1 or 270 in FIG. 2)." Opening, Ex. 2 ('339 Patent File History) at 90–91. But, as described above, Applicant's argument that a particular prior art reference contains a "single clock source" does not mean

24

Applicant disclaimed single clock sources.  Rather, a first and second clock signal that are input into a first and second PLL, respectively, may originate from the same clock source, but are "independent" from each other because neither clock signal depends on the other.

Furthermore, the Court agrees with Plaintiff that "instead" in the third sentence does not necessarily draw a distinction with the "independent" limitation in the second sentence.  Rather, one reasonable interpretation is that it contrasts the disclosure in Kim with the requirements of the claim language described in both the first and second sentences.  *3M Innovative Props.*, 725 F.3d at 1326 (when "an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable").  There is no indication that Applicant meant for the third sentence to directly contrast the second sentence.

In the fourth sentence, Applicant describes that "[t]he clock signal from this single clock source is then processed (i.e., divided or multiplied) and provided to each of the cores."  But the clock signals that are output by PLL 260 (indicated by respective arrows 262, 264, 266, and 268) are identical and all change in the same way together, including being divided or multiplied by the same amount by PLLs 216, 226, 236, and 246.  Kim at Figure 2.



FIG. 2

Finally, to the extent that the "clock signal from this single clock" referred to clock signal 272, clock signal 272 cannot be both the first clock signal or the second clock signal, and thus does not disclose the "independent" limitation.

For at least these reasons, while distinguishing Kim, Applicant did not make a "clear and unmistakable" disclaimer that disclaimed single reference oscillator systems.

Therefore, because the Applicant did not disclaim single reference oscillator systems while distinguishing Jacobowitz and Kim, and because Defendant did not allege the only other exception to plain-and-ordinary meaning, *i.e.*, lexicography, the Court adopts the Court's *Qualcomm* construction, which is: plain-and-ordinary meaning, wherein the plain and ordinary meaning does not require that the first and second clock signals depend from different reference oscillator clocks.

**B. Term #2: "located in a common region that is substantially central to the first set of processor cores and the second set of processor cores"**

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| #2: "located in a common region that is substantially central to the first set of processor cores and the second set of processor cores"<br><br>U.S. Patent No. 8,549,339, Claim 14<br><br>Proposed by Defendant | Plain and ordinary meaning | Indefinite |

**The Parties' Positions:**

This Court previously construed this term as indefinite. *Qualcomm* Claim Construction Order at 32, 35.

Defendant contends that the term is indefinite because both "substantially central" and "common region" are indefinite. *Id.* at 10–11. With respect to the former, Defendant contends that it is indefinite because it is a subjective term of degree without objective boundaries. *Id.* at 11 (citing cases). Defendant contends that the claim language itself is "rife with ambiguity." *Id.* More specifically, Defendant contends that the claims do not require any specific arrangement for the processor cores, which makes it "difficult" for a POSITA to evaluate whether the claimed "common region " is "substantially central." *Id.* Defendant further contends that "regardless of the cores' location, it is unclear what it means for the 'common region' to be 'substantially central' to the cores." *Id.* (citing *Qualcomm* Claim Construction Order at 33; ECF No. 25-1 (Pedram Declaration) at ¶ 63).

Defendant contends that the following figures "illustrate the ambiguity in the phrase 'substantially central.'" *Id.* For example, Defendant contends that it is unclear from the left figure how far up/down/left/right the control blocks can be and still be "substantially central." *Id.* at 12. Defendant also contends that, in the right figure, it is unclear whether the "common region" of control block is still "substantially central" or if it needs to be between the sets of processor cores to be so. *Id.*



Defendant contends that the specification likewise does not provide any guidance. *Id.* More specifically, Defendant contends that of the two times that "substantially" appears in the specification, neither relates to the physical relationship between "common region" and sets of processor cores. *Id.* at 13 (citing '339 Patent at 4:24–27). Defendant contends that while the specification describes that control blocks "may be arranged in a common area located near the center of the multi-core processor," "near the center" is essentially a synonym of "substantially central" and thus does not provide any guidance. *Id.* (quoting '339 Patent at 2:37–40).

With respect to "common region," Defendant first contends that it is not clear what it includes: control blocks only or sets of processor cores as well. *Id.* Defendant contends that the claim language does not shed any light on this question and that the specification only "deepens the ambiguity." *Id.* More specifically, Defendant contends that while the specification describes

28

that a "multi-core processor may be divided into regions," it also describes that "the power control block 108 and the clock control block 110 may be arranged in a common area" with no mention of cores. *Id.* at 13–14 (quoting '339 Patent at 2:20–23, 2:37–40).

Defendant contends that this limitation raises other issues, *e.g.*, does a "common region" require intermingling the structures for the control blocks (and possibly the core sets) in the same space? *Id.* at 14. Defendant contends that the specification and prosecution history are "no help" as the specification does not use the phrase "common region," but only a synonym ("common area") which does not provide any guidance. *Id.*

Defendant contends that, for the above reasons, this term is indefinite. *Id.*

In its response, with respect to "common region," Plaintiff contends that the patent uses "region" to refer to sections of a multi-core processor and that a POSITA would understand that "region" "corresponds with the subdivision of the multi-core processor containing the claimed sets of processor cores." Response at 8 (citing '338 Patent at 2:20–21, 2:22–23, 2:24–27). Based on that, Plaintiff contends that "common region" simply means a "common" subdivision of the multi-core processor containing both the first and second sets of processor cores. *Id.* at 9.

Plaintiff contends that Defendant "offers no explanation of how the claim [language] lacks clear delineation." *Id.* Plaintiff further contends that contrary to Defendant's argument, just because the specification explains that control blocks "may be arranged in a common area" without also mentioning the sets of cores does not mean that the claim term is indefinite. *Id.* Rather, Plaintiff contends that it is unnecessary for the specification to repeat all the contents of the region every time it describes the region. *Id.*

With respect to "substantially central," Plaintiff contends that all that is required for a term a degree like "substantially" to be not indefinite is "some standard for measuring the term of

29

degree." *Id.* (citing *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp.*, LLC, 879 F.3d 1332, 1346 (Fed. Cir. 2018)).  Plaintiff contends that the specification describes three possibilities for the location of the control blocks: (1) two different sides of the multi-core processor, (2) the same side of the multi-core processor, or (3) "in a common area located near the center of the multi-core processor." *Id.* (citing '339 Patent at 2:31–40).  Plaintiff contends that a POSITA would understand that "for the 'common region' of two sets of cores to be substantially central merely requires it to be within the multi-core processor as opposed to the sides." *Id.*  Plaintiff contends that while "within the multicore processor" is broad, breadth is not indefiniteness. *Id.* at 10–11 (citing *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1367 (Fed. Cir. 2017)).

With respect to Defendant's exemplary figures, Plaintiff contends that those figures "do not fairly or accurately show how a POSITA would consider this claim." *Id.* at 11.  Plaintiff contends that rather than focusing on "random arrangements of cores and control blocks when considering the scope of 'substantially central[,]' "a POSITA would consider functional arrangements." *Id.*  But Plaintiff contends that Defendant did not provide an explanation why those figures depict a functional arrangement. *Id.*

In particular, Plaintiff contends that the failure to show connections between sets of cores and the control blocks is "key." *Id.* at 12.  Plaintiff contends that "[w]ithout showing what is claimed to be 'substantially central,' [Defendant's] figures cannot meet its burden." *Id.*

Plaintiff contends that Defendant's arguments regarding the specification also fail. *Id.* More specifically, Plaintiff contends that Defendant ignores the full context of "near the center," namely that the context contrasts the "sides" of the multi-core processor with "near the center." *Id.* (citing '339 Patent at 2:31–40).  Plaintiff contends that Claims 5 and 14 cover each of these configurations with Claim 5 requiring that the control blocks are located on the periphery of the

multi-core processor and Claim 14 requiring that the control blocks are located in a common region that is substantially central. *Id.*

In its reply, with respect to "substantially central," Defendant contends that Plaintiff effectively rewrites "substantially central" to mean "within the multi-core processor." Reply at 7. Defendant contends that Plaintiff's approach is "fatally flawed" for three reasons. *Id.* Defendant first contends that it is improper to rewrite a claim term to preserve its validity. *Id.* (citing cases). Second, Defendant contends that "'within the multicore processor' is not interchangeable with 'substantially central' to the two sets of processor cores." *Id.* at 8. More specifically, Defendant contends that the former means that the "common region" "could be anywhere within the processor, regardless of where the core sets might be located" *Id.* Defendant finally contends that the specification's description that control blocks may be "in a common area near the center" does not nothing to clarify the meaning of "substantially central." *Id.* Defendant contends that the specification does not provide any guidance as to how near to the center the common region can be to be "substantially central." *Id.*

With respect to Plaintiff's arguments that Defendant's exemplary figures "figures "do not fairly or accurately show how a POSITA would consider this claim[,]" Defendant asserts that Plaintiff's argument is "both unsupported and incorrect" for four reasons. *Id.* First, Defendant contends that Plaintiff's statements are attorney argument. *Id.* Second, Defendant contends that a POSITA would understand that "connections are necessary for a processor to function and need not be shown." *Id.* (citing ECF No. 28-1 (Pedram Reply Declaration) at ¶ 7). Third, Defendant contends that "contrary to [Plaintiff's] suggestion that the figures do not 'comport with reality,' they resemble real-world layouts of two or more core sets[.]" *Id.* (citing ECF No. 28-1 (Pedram Reply Declaration) at ¶¶ 8–10). Fourth, Defendant contends that while the figures do not depict

the "common region," Defendant explained that the "common region" includes at least the control blocks which are depicted in the figures. *Id.*

With respect to "common region," contrary to Plaintiff's argument that the "common region" includes sets of cores, Defendant contends that the specification describes that a "common area" includes the control blocks without mentioning the sets of cores. *Id.* Accordingly, Defendant contends that "there is no clear answer to the fundamental question of whether the 'common region' includes the claimed processor cores[,]" which renders Claim 14 indefinite. *Id.* (citing ECF No. 25-1 (Pedram Declaration) at ¶¶ 56–60; *Media Rts. Techs., Inc. v. Cap. One Fin. Corp.*, 800 F.3d 1366, 1371 (Fed. Cir. 2015)).

Defendant contends that, even if the "common region" included the claimed sets of cores, "intractable questions" would still remain. *Id.* at 10. For example, Defendant contends that it is unclear how close the control blocks and core sets need to be in order to be in the "common region" or whether they need to be intermingled for them to be in a "common region." *Id.*

In its sur-reply, Plaintiff contends that it is not asking the Court to "preserve validity by reading the opposite meaning into the claim such as 'perpendicular' as 'parallel' or 'to' as 'at' or some other blatant substitution." Sur-Reply at 5.

With respect to "substantially central," Plaintiff contends that Defendant's comparison of "within the multicore processor" with "substantially central" is "nonsensical as it takes the terms out of context. *Id.* More specifically, Plaintiff contends that the comparison "must be if a 'common region' being 'substantially central' to the sets of processor cores[] means a 'common region' [is] 'within the multi-core processor.'" *Id.*

Plaintiff contends that "common region " simply means the subdivision that is common to two sets of processor cores. *Id.* Plaintiff contends that interpreting that the "common region" that

32

is "substantially central" to the two sets of processor cores as being "within the multi-core processor" does not rewrite the claims, but "considers them in context and in the detail a POSITA would consider to understand claim 14's scope." *Id.* at 5–6. Plaintiff contends that the specification's disclosure that the "common region" may be "near the center" (as compared to being on one side or both sides of the multicore processor) supports this interpretation and provides the guidance required by Federal Circuit precedent. *Id.* at 6.

With respect to Defendant's exemplary figures, Plaintiff contends that Defendant and its expert "made no effort to consider a real-world scenario and instead created a misleading graphic as a strawman." *Id.* Plaintiff contends that "there is no evidence or testimony that such a graphic would be considered or function beyond a conclusory line by a retained expert." *Id.* Plaintiff further contends that Defendant's expert's "real-world' example depicts a "common region" that is unarguably central to two of the three sets of cores. *Id.* at 9.

With respect to "common region," Plaintiff contends that Defendant argues that this term is indefinite, but does not address how the specification uses the word "region." *Id.* Plaintiff contends that Defendant's argument that the term is indefinite because the specification does not use the term, but only uses the term "common area," is "irrelevant" because the discussion about the claimed term is clear. *Id.*

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with Defendant that "substantially central" is indefinite for the reasons that follow. ***First***, independent Claim 1 and dependent Claim 14 do not provide any guidance as they do not require a physical arrangement of the processor cores from which a POSITA might understand with

33

reasonable certainty what it means to be "substantially central." ***Second***, the specification likewise does not provide any guidance. More specifically, the specification does not use the words "central," let alone the phrase "substantially central."

***Third***, Plaintiff contends that the specification describes three possibilities for the location of the control blocks: (1) "two different sides of the multicore processor," (2) "the same side of the multi-core processor," or (3) "in a common area located near the center of the multi-core processor." *Id.* (citing '339 Patent at 2:31–40). But, of these three possibilities, only the third describes applies to this claim term. Even then, because "near the center" in this passage, at best, only paraphrases "substantially central," this passage does not provide the necessary objective boundaries for a POSITA. *Interval Licensing*, 766 F.3d at 1371–72.

Furthermore, the specification's description that the control blocks may be on different sides or the same side of the multicore processor also does not provide guidance. More specifically, the specification's disclosure that the control blocks can be located around the periphery of the multicore processor does not provide any guidance what it takes to be "substantially central." At most, it only describes that "substantially central" does not include the periphery of the multicore processor. But the claim term is "substantially central," and not "not on the periphery of the multicore processor."

***Fourth***, depending on the location of the processor cores, a POSITA may not understand with reasonable certainty whether the control blocks are "substantially central." Using one of Defendant's figures as an example, a POSITA would not know whether the depicted control blocks are "substantially central" as it is unclear whether it requires that the control block to be at the same vertical level as the first and second set of processor cores or whether being in the middle horizontally is sufficient.

34



Based on the above, the Court concludes that there is clear and convincing evidence that a POSITA would not understand with "reasonable certainty" the scope of "substantially central." *Nautilus*, 572 U.S. at 910. As such, this term is indefinite.

Because the Court found "substantially central" to be indefinite, the Court does not need to reach whether "common region" is also indefinite.

For these reasons, the Court concludes that Defendant has provided clear and convincing evidence that this term is indefinite.

## IV.    CONCLUSION

In conclusion, for the reasons described herein, the Court adopts the below constructions as its final constructions.

**SIGNED** this 6th day of April, 2026.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Final Construction |
|---|---|---|---|
| #1: "the first clock signal is independent from the second clock signal"<br><br>U.S. Patent No. 8,549,339, Claims 1, 21<br><br>Proposed by Defendant | Plain and ordinary meaning | "the first and second clock signals depend from different reference oscillator clocks" | Plain-and-ordinary meaning, wherein the plain and ordinary meaning does not require that the first and second clock signals depend from different reference oscillator clocks. |
| #2: "located in a common region that is substantially central to the first set of processor cores and the second set of processor cores"<br><br>U.S. Patent No. 8,549,339, Claim 14<br><br>Proposed by Defendant | Plain and ordinary meaning | Indefinite | Indefinite |